**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3764
_____

MAHAKALI KRUPA, LLC;
HINA PATEL,
Appellants

v.

ALLSTATE INSURANCE COMPANY
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-12-cv-00569)
District Judge: Honorable Robert D. Mariani
_____

Argued June 8, 2015

Before: AMBRO and COWEN, <u>Circuit Judges</u>, and RESTANI,[*] <u>Judge</u>.

(Opinion Filed: July 23, 2015)

John P. Rodgers, Esq. **(Argued)**
Caverly, Shea, Phillips & Rodgers
15 Public Square
Suite 210
Wilkes-Barre, PA 18701

     Counsel for Appellants

Joseph J. Aguda, Jr., Esq.

_____

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Kim Tran Britt, Esq. **(Argued)**
Gerald J. Nielsen, Esq.
Nielsen, Carter & Treas, LLC
3838 North Causeway Boulevard
Suite 2850
Metairie, LA 70002

John R. Nealon, Esq.
Thomas A. Specht, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
P.O. Box 3118
Scranton, PA 18505

      Counsel for Appellee

_____

OPINION[**]

_____

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTANI, Judge.

Plaintiffs/Appellants Mahakali Krupa, LLC and its representative Hina Patel (collectively "plaintiffs") appeal the District Court's grant of summary judgment to Defendant/Appellee Allstate Insurance Company ("Allstate") on plaintiffs' claims relating to Allstate's failure to pay flood insurance benefits. We will affirm.

I.

Plaintiffs purchased a Subway franchise from Leonard Marconi ("Marconi") on August 23, 2011. At the time of sale, Marconi held a "contents only" Standard Flood Insurance Policy ("SFIP") through Allstate. Allstate is a "Write-Your-Own" ("WYO") Program flood insurance carrier participating in the National Flood Insurance Program ("NFIP"). As a WYO company, Allstate is authorized by the Federal Emergency Management Agency ("FEMA") to issue flood insurance policies in its own name and to administer those policies, but FEMA reimburses it for paid claims. See C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 265, 267 (3d Cir. 2004). Policies issued by a WYO company are subject to the National Flood Insurance Act of 1968, the regulations issued under the Act, and the terms and conditions of the Standard Flood Insurance Policy, which is published in the Code of Federal Regulations. 44 C.F.R. § 61.4(a)–(b). Marconi's SFIP allowed up to $60,000 in recovery. At the closing of the Subway franchise sale, Marconi suggested that he transfer the SFIP to plaintiffs and then

3

contacted his agent, Georgeanne Purcell ("Purcell"). Plaintiffs later contacted Purcell as well, and allegedly were told that the policy could be transferred to plaintiffs.

On September 8, 2011, plaintiffs' Subway franchise property sustained flood damage in the amount of $77,105.72. Plaintiffs did not process the paperwork to transfer the policy until after the flood. On September 26, 2011, Allstate issued a Flood General Policy Endorsement Declaration indicating that the policy had been changed to Hina Patel's name effective August 23, 2011. Plaintiffs later submitted a claim seeking the $60,000 limit under the SFIP. Allstate denied the claim on the basis that there was no policy in effect at the time of the flood. Under the terms of the SFIP, the policy could not be transferred because it covered only personal property. 44 C.F.R. Pt. 61, App. A(1), Art. VII(D)(1). Rather, plaintiffs had to purchase a new policy, which did not become effective until October 13, 2011, thirty days after Allstate received the plaintiffs' application to transfer the policy. 42 U.S.C. § 4013(c) (2012); 44 C.F.R. § 61.11(b)–(c).

Plaintiffs filed suit against Allstate, alleging that the flood damage was a covered loss pursuant to the provisions of the flood policy. Plaintiffs later attempted to reframe their complaint to include a tort claim for negligent misrepresentation. Allstate moved for summary judgment. The District Court ultimately concluded that there was no insurance contract between plaintiffs and Allstate at the time of the loss. The District Court also held that Allstate was not estopped from denying coverage. Regarding the misrepresentation claim, the Court held that it failed as a matter of law. First, it determined that the regulations preclude any misrepresentations made by Purcell being

4

imputed to Allstate. Second, the Court noted that Allstate itself did not make any misrepresentations until after the flood, and therefore plaintiffs could not have been relying on those statements at the time of loss.

Plaintiffs appeal the District Court's grant of summary judgment on their estoppel argument and their state law misrepresentation claim.[1]

II.

We exercise plenary review of the grant of summary judgment. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

III.

---

[1] We note that it is not clear whether plaintiffs actually preserved their appeal of the estoppel argument. Counsel at oral argument stated that this claim was also appealed, but plaintiffs' appellate brief makes only a single reference to estoppel in the argument section. Otherwise, plaintiffs refer to "state law tort principles," their "tort claims," Purcell's "negligent misrepresentations," or their "negligent representation claims." Because their estoppel argument fails for the same reasons as their negligent misrepresentation claim, we need not decide whether plaintiffs waived the issue by failing to adequately raise it in their appellate brief.

The District Court held that Allstate could not be held liable for Purcell's alleged misrepresentations as a matter of law, relying on 44 C.F.R. § 61.5(e). Section 61.5(e) provides:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent.

The District Court reasoned that Purcell was acting as an agent of the plaintiffs, not as an agent of Allstate, when she allegedly indicated that the plaintiffs would be covered beginning on the date of the sale of the Subway franchise (i.e., August 23, 2011). Because Allstate was the only party sued, and because Purcell's misrepresentations were the only ones upon which plaintiffs might have relied to their detriment, this resolved the issue. Based on the arguments presented to us, we find no error in this reasoning.

The regulation on its face appears to apply squarely to the situation here. Purcell allegedly made a representation that was contrary to the terms and conditions established by the statute, regulations, and express policy terms, by stating that Marconi's policy could be transferred to plaintiffs and that plaintiffs would be covered from the date of the sale of the Subway franchise. Because Purcell misrepresented the extent to which plaintiffs would be covered (namely, that they would be covered beginning on August 23, 2011, instead of following the thirty-day waiting period once they filed the proper

6

paperwork), the regulation dictates that Purcell was acting as an agent for plaintiffs, not Allstate. See Remund v. State Farm Fire & Cas. Co., 483 F. App'x 403, 408 (10th Cir. 2012) ("By creating the legal fiction that an insurance agent 'acts for the insured,' instead of for her employer (the private insurance company), § 61.5(e) shields the private insurance company from liability for certain of the agent's tortious acts.").

In their brief on appeal, plaintiffs focus solely on the issue of whether state law tort claims related to procurement are preempted as a general matter, arguing that although state claims related to claims handling are preempted, see C.E.R. 1988, 386 F.3d at 272 & n.12, claims related to procurement are not.[2] Plaintiffs failed to even cite—let alone discuss—44 C.F.R. § 61.5(e). Allstate then raised the regulation as a bar to their claim in its brief, and plaintiffs failed to file a reply brief addressing this argument. At oral argument, upon questioning by the panel, plaintiffs finally addressed the regulation directly. They made two related arguments as to why the regulation should not apply: first, if there was no policy in effect at the time of the loss, then the FEMA regulations do not apply; second, if FEMA would not be required to pay any resulting judgment, then the regulation does not apply.[3] Neither argument is persuasive.[4]

---

[2] The District Court explicitly declined to rule on this question, basing its decision solely on 44 C.F.R. § 61.5(e)'s effect on plaintiffs' theory of vicarious liability.

[3] Plaintiffs did not contest that Allstate was a "servicing agent" that would be shielded from liability under 44 C.F.R. § 61.5(e), assuming the regulation applies. Plaintiffs also did not contest that the misrepresentation went to the scope or extent of coverage.

[4] Because we determine that this case can be resolved on the basis of 44 C.F.R. § 61.5(e), we need not decide whether state law claims related to procurement are preempted as a

First, plaintiffs have cited no authority for their proposition that FEMA regulations do not apply if there was not a valid policy in effect at the time of loss. As a general matter, FEMA regulations often will be integral in answering the question as to whether there was a policy or not. To the extent that plaintiffs argue that FEMA should not be able to use regulations regarding claims handling or specific terms in the policy to defeat a claim when no policy existed, that argument fails with respect to 44 C.F.R. § 61.5(e). Nothing in the plain language of the regulation limits its application to representations made during the handling of claims. In fact, misrepresentations regarding the extent or scope of coverage are likely to occur during the "procurement" phase. Plaintiffs ask us to read a major exception to the plain language of the regulation that simply is not there. We decline such an invitation.

Moreover, plaintiffs have not cited any authority suggesting that FEMA is prohibited from promulgating a regulation that would apply to the procurement of a flood policy. The statute provides that "the Administrator of the Federal Emergency Management Agency is authorized to establish and carry out a national flood insurance program which will enable interested persons to purchase insurance against loss resulting from physical damage to or loss of real property or personal property related thereto arising from any flood occurring in the United States." 42 U.S.C. § 4011(a). It further provides that "[t]he Administrator is authorized to issue such regulations as may be

---

general matter. Cf. Campo v. Allstate Ins. Co., 562 F.3d 751, 752 (5th Cir. 2009) (holding that state law claims related to policy procurement are not preempted by federal law). Rather, we hold only that plaintiffs' theory of vicarious liability for the particular tortious conduct in this case is precluded by the regulation.

8

necessary to carry out the purpose of this Act." 42 U.S.C. § 4128(a). The statute's broad grant of rule-making authority certainly appears to give FEMA the power to regulate how policies issued under the NFIP are sold. And if the Administrator determined that shielding WYO companies from liability for certain agent misrepresentations would encourage WYO participation and advance the goals of the program, see Remund, 483 F. App'x at 408 (describing this purpose as a possible policy behind the regulation), the broad grant of rule-making authority in § 4128 would appear to authorize the relevant regulation. The question before us is not whether all state tort claims related to procurement are preempted. The question is whether Allstate can be held liable for the negligent misrepresentations of its agent when the representation concerns the scope or extent of coverage of a policy. The plain language of the regulation says that Allstate cannot, and the distinction between misrepresentations made during "procurement" and those made during "claims handling" is nowhere to be found in the regulation or the statute.

We also reject plaintiffs' second argument that the regulation acts as a bar to recovery from the WYO company only when FEMA otherwise would be obligated to pay the resulting judgment. Plaintiffs correctly observe that the arrangement between FEMA and the WYO companies ("the Arrangement") indicates that FEMA will not reimburse a WYO company "if there is negligence by the agent." 44 C.F.R. pt. 62, app. A, art. IX. Whether FEMA pays the resulting judgment, however, does not change the plain language of 44 C.F.R. § 61.5(e). The regulation does not say that it applies only if

9

federal funds are at risk. Again, plaintiffs ask us to insert a limitation into the regulation that does not exist. As explained above, FEMA might have desired to limit the liability of WYO companies for certain claims in order to encourage them to participate in the NFIP. This motivation is divorced from whether FEMA would have to pay the judgment. The fact that FEMA reiterated that it also will not pay for such claims does not undermine our reading of § 61.5(e). We also note that WYO companies are required to strictly follow the statute, regulations, and SFIP in determining whether claims should be paid under the policy. See C.E.R. 1988, 386 F.3d at 267. Section 61.5(e)'s limitation of liability for the WYO company eliminates to some degree a WYO company's motivation to agree with the erroneous advice given by an agent, as the WYO company would know that it will not be held responsible for the agent's initial misrepresentation if the company denies the claim.

Finally, even assuming that Article IX of the Arrangement suggests an acknowledgement that WYO companies might be held liable for the negligent actions of their agents in some circumstances, it still does not support plaintiffs' argument. Section 61.5(e) deals with a very specific type of tortious conduct—misrepresentations by the agent regarding the extent or scope of coverage. Assuming arguendo that Article IX suggests that WYO companies can be held liable for the tortious acts of their agents, 44 C.F.R. § 61.5(e) and Article IX can be read together to give effect to both provisions. If the tortious conduct is a misrepresentation concerning the extent or scope of coverage, the WYO company cannot be sued. See 44 C.F.R. § 61.5(e). If the tortious conduct

10

involves some other act, the plaintiff could sue the WYO company, and FEMA would refuse to reimburse the WYO company for those expenses. Our reading does not create an irreconcilable conflict between the two provisions.

In conclusion, plaintiffs' arguments, made only at oral argument after questioning by the panel, regarding the District Court's interpretation and application of 44 C.F.R. § 61.5(e) are unpersuasive. We therefore will affirm the District Court's grant of summary judgment.

IV.

Even if we had doubts about the proper interpretation and application of 44 C.F.R. § 61.5(e), we still would decline to remand this matter, as the record on summary judgment could not support plaintiffs' claims of detrimental reliance. The doctrine of equitable estoppel under Pennsylvania law "arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." In re Estate of Tallarico, 228 A.2d 736, 741 (Pa. 1967). To establish the tort of negligent misrepresentation, the plaintiffs must show "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999). Under either theory,

11

plaintiffs would have to show that they were prejudiced by the misrepresentation. The record, however, is insufficient to support such a claim.

In their opposition to summary judgment and in their brief before the court, plaintiffs allege that

> [h]ad they been fully informed by Allstate's agent regarding the limitations on flood insurance coverage, they could have decided on different options, one of which is not to purchase the property in the flood zone, or use the contents for collateral for a loan which would have permitted immediate assignability of the flood insurance that already existed on the property and contents. Allstate's agent failed to give the Appellants that option and, as a result, they have suffered a loss of $60,000.00.

Appellant's Br. 22–23; see also Dist. Ct. Dkt. Entry 22 at 18. We first note that plaintiffs never raised a claim of estoppel or negligent misrepresentation in their complaint. Rather, these claims were raised in plaintiffs' opposition to Allstate's motion for summary judgment, and plaintiffs never amended their complaint. Thus, whether plaintiffs even should be allowed to continue pursuing these claims is not entirely clear. Regardless, the record submitted in plaintiffs' opposition to Allstate's motion for summary judgment is insufficient to support these assertions.

To the extent that plaintiffs claim that they relied on Allstate's or Purcell's misrepresentations in deciding to purchase the Subway franchise, this assertion has no support in the record. Plaintiffs purchased the Subway franchise on August 23, 2011. They, however, did not speak with Purcell until August 26, 2011. They thus could not have been relying on her statement at the time they purchased the franchise. Counsel at oral argument claimed that Marconi, the seller, had spoken to Purcell before the sale

12

closed, that Purcell said that the policy could be transferred, and that Marconi passed this information on to plaintiffs at closing. The deposition testimony cited for this assertion, however, does not support that claim. Gopal Patel testified that Marconi asked him at closing whether plaintiffs desired to take over his flood insurance policy, and that plaintiffs said they were interested. When asked what happened next, Mr. Patel testified: "I think he contacted . . . Georgeanne [Purcell]." Nowhere did Mr. Patel testify that Marconi spoke with Purcell before the date of closing, or that Marconi indicated that Purcell assured him that Marconi's flood policy could be transferred. And plaintiffs failed to depose either the person who allegedly made the misrepresentation (Purcell) or the person who supposedly passed on the alleged misrepresentation (Marconi). Any conclusion that Purcell made a misrepresentation regarding the ability to transfer the policy before the sale of the franchise closed would be pure speculation. Thus, plaintiffs' first theory of detrimental reliance fails.

Plaintiffs also contend that, had they known that the policy could not be transferred, they would have taken out a loan using the property as collateral, which would have made the new policy effective immediately upon the closing of the loan. 44 C.F.R. § 61.11(b) provides:

> Where the initial purchase of flood insurance is in connection with the making, increasing, extension, or renewal of a loan, the coverage with respect to the property which is the subject of the loan shall be effective as of the time of the loan closing, provided the written request for the coverage is received by the NFIP and the flood insurance policy is applied for and the presentment of payment of premium is made at or prior to the loan closing.

13

To succeed on this theory, plaintiffs would have to show that Allstate or Purcell made a misrepresentation before the flood occurred on September 8, 2011, and that plaintiffs could have obtained a loan, presented the request for coverage to the NFIP, and paid the insurance premium on or before that date.

Hina Patel testified that plaintiffs had been pre-approved for a bank loan at the time they purchased the Subway franchise, and that if they had known that the policy would become effective immediately only if the property was used as collateral for a loan, they would have taken out such a loan. This is insufficient to support to plaintiffs' theory of detrimental reliance. First, as explained above, plaintiffs made the decision to purchase the Subway franchise, and logically to use their own savings instead of a loan, before Purcell made the alleged misrepresentations on August 26. Second, to the extent that plaintiffs could have taken out a loan <u>after</u> purchasing the property by using the property as collateral, there is absolutely no evidence in the record suggesting that they would have been approved for that loan (after having depleted $70,000 of their savings to purchase the property) or that they would have been able to submit an application and premium payment to the NFIP and close on any such loan before the flood occurred on September 8, less than two weeks after the misrepresentation. Nothing in the record suggests whether this would have been possible, and thus any conclusion on this point in favor of plaintiffs would be based upon speculation. Therefore, their claim based on this theory also fails.

V.

14

For the reasons set forth above, we will affirm.

*Mahakali Krupa, et. al. v. Allstate Ins. Co.*, No. 14-3764, Dissenting

COWEN, Circuit Judge, dissenting.

The majority today puts the analytical cart before the horse.  In its zeal to avoid answering the central question of preemption in this case, it applies a federal regulation that, if Appellants' claims are not preempted by federal law, it should not apply.  Because I conclude that Appellants' claims are not preempted and that reference to the federal regulations in this regard is therefore inappropriate, I respectfully dissent.

A.    Preemption

The question at the heart of this matter is one we expressly left open in *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 271 n.12 (3d Cir. 2004): whether a state law claim of negligent misrepresentation arising in the procurement of national flood insurance is preempted by federal law.  If Appellants' claims are not preempted, we should apply the substantive law of Pennsylvania.   If Appellants' claims are preempted, federal law governs and it is appropriate to look at the applicable federal regulations. Preemption is therefore the only logical place to begin our analysis.

In 1983, pursuant to regulatory authority granted by Congress, FEMA created the "Write Your Own" ("WYO") program.  *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir. 1998). Under this program, Allstate, as a private insurance company, enters into an arrangement (the "Arrangement") with the Federal Emergency Management

Agency ("FEMA"), whereby the insurance company agrees to issue a standard flood insurance policy ("SFIP") under its logo. *C.E.R. 1988, Inc.*, 386 F.3d at 267. The Arrangement and the SFIP are codified federal laws. *See* 44 C.F.R. Pt. 62, App. A (Arrangement), and 44 C.F.R. Pt. 61, App. A(1) (SFIP).

As we noted in *C.E.R. 1988, Inc.*, the "overarching purpose" of the National Flood Insurance Program ("NFIP") is "to provide affordable flood insurance in high-risk areas in order to reduce pressures on the federal fisc." 386 F.3d at 265. Thus, if Appellants' state law claims do not implicate public government funds, there is little reason to believe Congress intended to preempt them. *See id.* at 268 (noting that "'Congress would want federal courts to adjudicate disputes over federal flood insurance policies *for which the federal government would be responsible.'* By the same token, Congress would want federal law to govern those disputes. And what Congress intends is the crux of our preemption analysis.") (quoting *Van Holt*, 163 F.3d at 167) (emphasis added).

Although it is generally true that Allstate, in its role as fiscal agent of the government, will not have its own money at stake, the Arrangement contemplates circumstances in which the federal government will refuse to reimburse the WYO insurer for its costs. Specifically, Article III(D)(3)(a) of the Arrangement, entitled "Limitation of Litigation Costs," provides that if the FEMA Office of the Chief Counsel ("OCC") "finds that the litigation is grounded in actions by the Company [here, Allstate] that are significantly outside the

2

scope of this Arrangement, *and/or involves issues of agent negligence*, then the FEMA OCC shall make a recommendation to the FIA regarding whether all or part of the litigation is significantly outside the scope of the Arrangement." 44 C.F.R. Pt. 62, Art. III(D)(3)(a) (emphasis added). This strongly suggests that FEMA views issues of agent negligence as akin to actions "significantly outside the scope of this Arrangement," that will not ordinarily be reimbursed. Similarly, I find the language of Article IX of the Arrangement, entitled "Errors and Omissions," highly instructive. 44 C.F.R. Pt. 62, App. A, Art. IX. Although Article IX applies in circumstances where a WYO company's negligence leads to a claim against it, but not litigation, it contains arguably stronger language than Article III(D)(3)(a). Article IX states that "(i) if the claim against the Company is grounded in actions significantly outside the scope of this Arrangement or (ii) *if there is negligence by the agent, FEMA will not reimburse [the Company] any costs incurred due to that negligence.* The Company will be notified in writing within thirty (30) days of a decision not to reimburse." *Id.* (emphasis added).

Thus, unlike Article III(D)(3)(a), which states that in litigation involving the negligent acts of agents, FEMA will make a *recommendation* as to whether the litigation is in whole or in part outside the scope of the Arrangement, Article IX states that in claims arising from the negligent acts of agents, FEMA will simply refuse reimbursement. But despite the slight variations in language, taken together, these provisions establish that, in the ordinary course, FEMA will not reimburse WYO companies for claims arising from the

3

allegedly negligent acts of their agents. The majority and I are in agreement on this point. (*See* Majority Op. at 9 (noting that Appellants "correctly observe that the arrangement between FEMA and the WYO companies [ ] indicates that FEMA will not reimburse a WYO company 'if there is negligence by the agent.'" (citing 44 C.F.R. pt. 62, app. A, art. IX).)

The Arrangement, however, draws no distinction between claims handling and procurement. Prior to 2000, the Arrangement could therefore have been fairly read to imply that regardless of whether the alleged negligence occurred during the procurement of a policy or during the handling of a claim, reimbursement might be equally unavailable. But in 2000, FEMA amended the language of the SFIPs, which are codified at 44 C.F.R. Pt. 61, App. A(1), A(2), and A(3). This change, which occurred after the debate over the procurement/claims handling distinction was already underway, amended the language of the SFIPs to include the following: "This policy and all disputes *arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations* issued by FEMA, the National Flood Insurance Act of 1968 . . . and Federal common law." 44 C.F.R. pt. 61, app. A(1), art. IX (emphasis added).

The effect of the change is that Congress explicitly preempted all state law claims – including those based on agent negligence – if they are related to claims handling. It seems very unlikely that FEMA would specify only that the "handling of any claim" would be governed exclusively by

the flood insurance regulations if it also intended to preempt procurement-related claims. *See C.E.R. 1988, Inc.*, 386 F.3d at 269 n.6 (noting that the "principal differences between the current provision and its predecessor are the addition of the term "exclusively" and the express inclusion of disputes arising from claims handling.").

In light of the purpose of the NFIP to guard the public fisc, FEMA's decision to carve out exceptions to its reimbursement policies based on claims arising from agent negligence, and FEMA's 2000 amendment to the SFIP preempting only state law claims related to the "handling of claims," both the statute and the regulations evince an intent that procurement-related claims not be preempted by federal law. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 758 (5th Cir. 2009) (concluding that procurement-related flood insurance claims were not preempted because the principal purpose in enacting the NFIP was to "reduce . . . the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance," and FEMA "does not reimburse carriers for procurement-related judgments.") (alteration in original) (citation omitted). We should therefore apply Pennsylvania law to resolve Appellants' claims.

B.    44 C.F.R. § 61.5(e)

To circumvent the question of preemption and avoid an otherwise straightforward application of Pennsylvania state law, the majority relies on 44 C.F.R. § 61.5(e). That regulation, entitled "Special terms and conditions," provides that "representations regarding the extent and scope of

5

coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and *the duly licensed property or casualty agent acts for the insured and does not act for the Federal Government, [FEMA], or the servicing agent [here, Allstate]."* 44 C.F.R. § 61.5(e) (emphasis added). The majority reasons that because Allstate's insurance agent [Purcell] was acting on behalf of Appellants, any claim would have to proceed against that agent, and not the WYO insurer. Because Appellants failed to bring a suit against Purcell, the majority continues, their claims necessarily fail.[1] I disagree.

The problem with the majority's reasoning is inherent in its decision to bypass the preemption analysis. Only upon resolution of the preemption issue, can we properly determine whether a particular federal regulation applies. Because, for the reasons I have already articulated, I conclude that Appellants' procurement-related state law claim is not preempted, consideration of that claim should be conducted

---

[1] I note that the majority refers to the Tenth Circuit's non-precedential opinion in *Remund v. State Farm Fire & Cas. Co.*, 483 F. App'x 403, 408 (10th Cir. May 17, 2012). But in *Remund*, the Tenth Circuit looked primarily to section 61.5(e) to conclude that procurement-related claims were preempted. *Id.* Although I do not find the Tenth Circuit's opinion persuasive on the issue of preemption as it simply ignored the statutory purpose and regulatory text that undermines its conclusion, the Court recognized that it had to address the issue of preemption before it simply applied section 61.5(e) to the state law claims at issue. *Id.* at 407-09.

6

pursuant to Pennsylvania law without regard to section 61.5(e).

The majority faults Appellants for citing no authority for the proposition that FEMA regulations do not apply in the absence of a valid policy.  (Majority Op. at 7-8.)  But this turns the analysis on its head.  As we have indicated on prior occasions, the purpose of the NFIP was to reduce pressures on the federal fisc.  *See C.E.R. 1988, Inc.*, 386 F.3d at 265.  In the absence of any claim that implicates federal funds, there is no reason to believe that Congress had any interest in limiting the liability of WYO insurers.  *See Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 953, 955 (6th Cir. 2002) (Moore, J. concurring in part and dissenting in part) (noting that the federal regulations envision that litigation costs related to "negligence" will arise from state-law tort claims and are not reimbursable under the NFIP and explaining that the argument that insurers like Allstate would refuse to participate in the system unless they are insulated from such state-law tort claims "fails to take account of the fact that insurers are ordinarily subject to [such] claims," and there is no reason why "subjecting WYO insurers to the same rules to which they are normally subject would affect their behavior.").

7

Indeed, although not a preemption case, this very analysis was rejected by the Fifth Circuit in *Spence v. Omaha Indem. Ins. Co*., 996 F.2d 793, 797 (5th Cir. 1993). There, the Court declined to read 44 C.F.R. § 61.5(i) -- now 44 C.F.R. § 61.5(e) -- as absolving WYO insurers from tort liability for misrepresentations of their agents. Instead, it concluded that the regulation, "read as a whole, plainly evinces an intent to prevent expansion of SFIP coverage through misrepresentations by private parties involved with the program, *thereby protecting the government from expanded liability*. We decline to accept a reading of that provision immunizing WYO companies from liability for the tortious conduct of their agents." *Id.* (emphasis added). As the Fifth Circuit aptly noted, when section 61.5(e) is read in the broader context of the NFIP, it becomes clear that it was the government's concern with guarding public funds that led it to limit its *own* liability regarding the negligent misrepresentations of WYO insurers' agents. It did not intend to interfere with procurement-related state law claims, the liability for which would be borne by the WYO insurers.

Moreover, the majority's attempt to limit its holding today is unavailing. It asserts that section 61.5(e) prevents procurement-related claims arising from agent misrepresentations regarding only the extent or scope of coverage. (Majority Op. at 10.) But it is hard to imagine what other claims might be brought in the procurement context if not those for misrepresenting the extent and scope of coverage. Indeed, by concluding that such claims against the WYO insurer are barred by section 61.5(e), the majority eviscerates the distinction between claims arising from

8

procurement and those arising from "claims handling" without even addressing the central question.  The practical effect will be that few, if any, claims of misrepresentation arising from agent negligence in the procurement context will ever succeed, because the representations most likely to be made to convince individuals to obtain flood insurance will of course pertain to the extent and scope of coverage.  This clearly was not the intent of FEMA when it drafted its regulations to carve out an exception to its reimbursement plan of WYO insurers for the negligent acts of these insurers' agents.  By sending the message that such claims would not implicate federal funds, and were therefore not preempted, the government wished to ensure that such claims against WYO insurers could proceed.  The majority's decision today frustrates that intent.

C.      The Merits of Appellants' State Law Claim

Applying Pennsylvania law, I note that the record is sufficient for Appellants' negligent misrepresentation claim to survive summary judgment and I would remand the matter to the District Court.

To establish the tort of negligent misrepresentation, the plaintiffs must show "(1) a misrepresentation of a material fact; (2) made under circumstances in which the individual making the representation ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."  *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

9

Pennsylvania law does not require that the misrepresentation be made directly to the individual asserting the claim. Rather, courts have indicated that the misrepresentation may be communicated indirectly to the recipient through a third party. In the context of negligent misrepresentation, the statement maker's liability is more narrow than in cases of fraudulent misrepresentation, and the maker will be liable only if he or she intended the misrepresentation to be repeated to the recipient and for the recipient to rely on it. *Woodward v. Dietrich*, 548 A.2d 301, 309 (Pa. Super. Ct. 1988).

As this comes to us on a motion for summary judgment we must view the facts in a light most favorable to Appellants. Here, Appellants have successfully met the requirements. First, there is no dispute that Purcell misrepresented whether the flood insurance would transfer. Second, as Allstate's agent, she ought to have known its falsity. Third, it is arguable on the record before us that a direct misrepresentation was made to the plaintiff corporation. But even if there was no such misrepresentation, given that no direct misrepresentation is required under Pennsylvania law, a reasonable factfinder could conclude that Purcell's misrepresentation to either the previous owner or to a different partner in the plaintiff corporation was intended to be repeated to Plaintiff Hina Patel.

Fourth, as a result of Purcell's misrepresentations, Appellants argue they were foreclosed from using the contents of their property for collateral for a loan which

would have permitted immediate assignability of the flood insurance that already existed on the property and contents. As Plaintiff Hina Patel testified, Appellants decided not to use the contents as collateral and to instead use their own personal savings because "[w]e didn't know that the clause for the flood that --- we could have got the loan if we knew that the flood was a factor." (App. 109a.) Indeed, Patel testified that they "had a pre-approval from PNC Bank, so it wasn't a problem to get a loan, but since we had our own personal savings, we just didn't want to go forward with the loan, but if we knew back then that our flood insurance policy would be active only if the loan is there, then we would have had to protect our business." (*Id.*) On this record, I believe Appellants have presented sufficient evidence to survive summary judgment and I would remand the matter to the District Court for further proceedings.

D.    Conclusion

In light of the foregoing, I would remand the matter to the District Court for proceedings consistent with this opinion.

11