FILED
United States Court of Appeals
Tenth Circuit

May 17, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EDVIN C. REMUND,

        Plaintiff-Appellant,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

        Defendant-Appellee.

No. 10-4107
(D.C. No. 2:07-CV-00448-CW)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **HOLMES**, Circuit Judges.

Plaintiff-Appellant Edvin C. Remund appeals the district court's order granting summary judgment to Defendant-Appellee State Farm on Mr. Remund's state-law claims for breach of warranty and estoppel. Mr. Remund alleges that the State Farm insurance agent who sold him a Standard Flood Insurance Policy ("SFIP") under the National Flood Insurance Program ("NFIP") misled him about the scope of coverage under the policy. After Mr. Remund suffered damage that he thought was covered under the policy, he filed a claim. State Farm denied it,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

and Mr. Remund sued.  The district court entered summary judgment in favor of State Farm, and Mr. Remund filed this timely appeal.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

## I.  BACKGROUND

Mr. Remund owns property in Salt Lake City, Utah, on which is built his primary residence and a cabin at the back of the property.  Red Butte Creek runs directly beneath the cabin, which rests on concrete piers that support the cabin as it spans the creek.  Channel walls made out of rock direct the flow of the creek under and away from the cabin and piers.

In April 2005, Mr. Remund bought flood insurance from State Farm under the NFIP.  Before buying the SFIP, Mr. Remund alleges that he explained to Vickie Tuua, a State Farm insurance agent, that he wanted to get insurance against any damage to the channel walls, the piers supporting the cabin, and to the cabin itself caused by high spring runoff down Red Butte Creek.  Ms. Tuua allegedly told Mr. Remund that the SFIP would cover any damage or loss to his property caused by high spring runoff down Red Butte Creek.

Mr. Remund received a copy of the SFIP from State Farm.  He read the SFIP and understood that the federal government was the underwriter of the policy.  The SFIP says that State Farm "provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations (CFR)."  Aplt. App. at 120 (SFIP, attached as

Ex. 2 to Mem. Supp. Mot. for Summ. J., filed May 12, 2009).

Established under the National Flood Insurance Act of 1968, the NFIP is designed to make flood insurance available "on a nationwide basis through the cooperative efforts of the Federal Government and the private insurance industry" by "pooling risks, minimizing costs, and distributing burdens equitably among those who will be protected by flood insurance and the general public." 42 U.S.C. § 4001(d). FEMA administers the program, Exec. Order No. 12127, 44 Fed. Reg. 19,367 (Mar. 31, 1979), *reprinted in* 15 U.S.C. § 2201 (making effective Reorganization Plan No. 3 of 1978, 43 Fed. Reg. 41,943 (Sept. 19, 1978), *reprinted in* 15 U.S.C. § 2201), writes the SFIP, 44 C.F.R. § 61.4(b), and makes the rules as to claims made under the SFIP, *id.* NFIP insurance is marketed either directly by FEMA or through "Write-Your-Own" ("WYO") carriers, like State Farm, who act as "fiscal agents" of the United States and service the policies. *See* 42 U.S.C. § 4071(a)(1); 44 C.F.R. §§ 61.4(b), 61.13(d)–(f), 62.23(c)–(d).

As part of the foregoing scheme, and pertinently for this case, 44 C.F.R. § 61.5(e) reads:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly

-3-

licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the [WYO carrier].

Under "Property Not Covered," the SFIP lists: "[f]ences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks." Aplt. App. at 128; *see also* 44 C.F.R. Pt. 61, App. A(1) § IV.12.

In May 2005, rising water levels damaged the channel walls in Red Butte Creek and began to undermine the foundation of Mr. Remund's cabin. In 2006, additional runoff water further undermined the walls and structural support for his cabin. State Farm denied coverage for Mr. Remund's claims to recover for the damage under the SFIP. It is undisputed that, by its terms, the SFIP does not cover Mr. Remund's damage. *See* Aplee. Supp. App. at 438 (Stipulation, filed Apr. 9, 2009) (embodying Mr. Remund's stipulation that the SFIP "purchased by [Mr. Remund] through State Farm Fire and Casualty Company does not provide coverage for the damages to his property as alleged in his Complaint"); Aplt. App. at 257 n.1 (Dist. Ct. Order and Mem. Decision, filed May 18, 2010) ("Mr. Remund does not dispute that the coverage he now seeks i[s] inconsistent with the scope of coverage provided."); *see also* Aplt. Reply Br. at 14 ("Remund does not dispute the scope of coverage. He seeks to recover for misrepresentations made prior to the time he purchased an SFIP.").

Mr. Remund filed suit against State Farm in Utah state court alleging breach of contract, breach of warranty, estoppel, and bad faith. Mr. Remund did

-4-

not name Ms. Tuua, the United States, or FEMA as a defendant.

State Farm removed the case to federal court, and following removal Mr. Remund voluntarily dismissed all of his claims except the breach of warranty and estoppel claims. On those two claims, the district court granted summary judgment for State Farm. Specifically, the district court determined that those two claims are preempted by federal law under both express and conflict preemption.

## II. ANALYSIS

### A. *Standard of Review*

We review the district court's order granting summary judgment de novo, and we draw all reasonable inferences in favor of the nonmoving party—in this case, Mr. Remund. *See Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). "[S]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).

### B. *Estoppel and Breach of Warranty under Utah Law*

Although the parties discuss both of Mr. Remund's claims—estoppel and breach of warranty—together as "policy-procurement claims," we take a different approach. To determine whether Mr. Remund's claims are preempted we review each claim individually, comparing the elements of the state-law claim to the

mandates of federal law. *See PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2573 (2011) ("Pre-emption analysis requires us to compare federal and state law.") Accordingly, our discussion of whether Mr. Remund's claims are federally preempted begins with a basic understanding of estoppel and breach of warranty under Utah law.

### 1. *Estoppel*

Utah law "holds insurance agents to accurately representing policy provisions and honestly answering consumer questions." *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1096 (Utah 2007). "Agents who are not trained to act with complete honesty and integrity in their interactions with consumers, or who simply refuse to do so, place *themselves and their principals* at risk. The law will hold *both principal and agent* liable for misrepresentations upon which consumers reasonably rely." *Id.* (emphasis added).

> Estoppel may be applied *to modify terms of an insurance policy* when (1) an agent makes material misrepresentations to the prospective insured as to the scope of coverage or other important policy benefits, (2) the insured acts with prudence and in reasonable reliance on those misrepresentations, and (3) that reliance results in injury to the insured.

*Id.* at 1094 (emphasis added).

### 2. *Breach of Warranty*

Under Utah law, "[a] warranty is an assurance by *one party* to a contract of the existence of a fact upon which the *other party* may rely." *Groen v. Tri-O-*

-6-

*Inc.*, 667 P.2d 598, 604 (Utah 1983) (emphasis added).

> A person may warrant the occurrence of future events or of events which could not possibly happen. The substance of such a warranty is in effect a promise to respond in damages proximately caused by the nonexistence of a represented fact, or the failure of a promised event to occur. . . . It is sufficient if there is a misrepresentation of an existing fact or a promise that a specified event will occur in the future, if such representation or promise has a natural tendency to induce another in reliance thereon to purchase, sell or exchange his property.

*Welchman v. Wood*, 353 P.2d 165, 167 (Utah 1960) (footnote omitted).

### C. *Conflict Preemption*

We conclude that Mr. Remund's state-law claims are preempted under the conflict-preemption doctrine. "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985); *see also PLIVA, Inc.*, 131 S. Ct. at 2579 ("[T]he text of the [Supremacy] Clause—that federal law shall be supreme, 'any Thing in the Constitution or Laws of any State to the Contrary notwithstanding'—plainly contemplates conflict pre-emption by describing federal law as effectively repealing contrary state law.").

"[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)) (internal quotation marks omitted); *see Perez v. Campbell*, 402 U.S. 637, 652

(1971) ("[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause."); *see also Boggs v. Boggs*, 520 U.S. 833, 844 (1997) ("Conventional conflict pre-emption principles require pre-emption 'where compliance with both federal and state regulations is a physical impossibility, . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992))).

We do not "assume[] lightly that Congress has derogated state regulation, but instead . . . address[] claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *N.Y. State Conference Of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). "Since pre-emption claims turn on Congress's intent, we begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *Id.* at 655 (citation omitted).

In performing this preemption inquiry here, we need look no further than one of the NFIP's implementing regulations,[1] which states:

> [R]epresentations regarding the extent and scope of coverage
> [under the SFIP] which are not consistent with the National

---

[1] "[The Supreme Court has] held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes." *Automated Med. Labs.*, 471 U.S. at 713.

Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the [insurance] agent *acts for the insured* and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the [WYO carrier].

44 C.F.R. § 61.5(e) (emphasis added).

By creating the legal fiction that an insurance agent "acts for the insured," instead of for her employer (the private insurance company), § 61.5(e) shields the private insurance company from liability for certain of the agent's tortious acts.[2] Whether this is good public policy because it makes participation in the NFIP more attractive to private insurance companies, or bad public policy because it may result in injustice for some insureds, is not for us to decide. The objective of

---

[2] The NFIP does not, however, similarly shield agents from liability for their own delict. *See* 42 U.S.C. § 4081(c) ("The Administrator of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission."). As previously mentioned, Mr. Remund did not elect to sue Ms. Tuua for any alleged wrongdoing. Furthermore, we pause to note that Mr. Remund's reliance on the Fifth Circuit's reading of identical language from an earlier version of FEMA's regulation to support his argument *against* preemption is unavailing. *See Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 796 (5th Cir. 1993) (construing 44 C.F.R. § 61.5(i) and appearing to "decline to accept a reading of that provision immunizing WYO companies from liability for the tortious conduct of their agents"); *see also* National Flood Insurance Program, 58 Fed. Reg. 62,420, 62,422 (Nov. 26, 1993) (noting that "paragraph (i) is . . . redesignated as paragraph (e)"). In a subsequent decision, the Fifth Circuit made clear that *Spence* is inapposite because its focus was the operation of the state-law statute of limitations, not federal preemption. *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389 (5th Cir. 2005) ("A careful reading of *Spence*, however, reveals that *Spence* does not hold that state law tort claims are *not* preempted by the [National Flood Insurance Act]." (emphasis added)).

federal law, as evinced by 44 C.F.R. § 61.5(e), is clear, and we cannot ignore it.[3]

---

[3]      We recognize that, in deciding that so-called procurement-related claims were not preempted, the Fifth Circuit reached a different conclusion regarding the impact of such claims on Congress's purposes and objectives. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 758 (5th Cir. 2009). Having considered *Campo*, however, we are not persuaded by its reasoning. *Campo*'s holding rests in part on a narrow reading of the preemptive scope of FEMA's regulations promulgated to effectuate the NFIP, construing those regulations to exclude from preemption procurement-related claims. *Id.* ("[U]nlike in handling-based cases, permitting prosecution of procurement-related state-law tort suits does not impede the full purposes and objectives of Congress. . . . FEMA extensively regulates the management of existing coverage while demonstrating no such interest in procurement."). In particular, *Campo* relied on the view that "FEMA does not reimburse carriers for procurement-related judgments. . . . [Thus,] state-law tort claims related to procurement do not interfere with Congress's objectives." *Id.* However, prior to *Campo*, FEMA expressly rejected that view in litigation before the district court in *Moffett v. Computer Scis. Corp.*, 457 F. Supp. 2d 571, 587 (D. Md. 2006). And, relying in part on that rejection, the district court in *Moffett* was persuaded that "federal funds may very well be at stake in connection with procurement fraud claims." *Id.* We find the reasoning of *Moffett* on this specific point to be persuasive. *See id.* at 587–88. Moreover, in a subsequent regulatory bulletin, FEMA expressly rejected *Campo*'s reading of the preemptive scope of its regulations implementing the NFIP and of the impact of contrary state laws on Congress's purposes and objectives. *See* Edward L. Connor, Acting Fed. Ins. Adm'r, Nat'l Flood Ins. Program, WYO Program Bulletin No. W–09038, Notice of FEMA's Intent to Adopt, by Regulation, a Clarification of the Current Express Preemption Clause of the Standard Flood Insurance Policy (July 16, 2009), attached as Ex. A to Dist. Ct. Doc. No. 56, *available at* http://www.nfipiservice.com/stakeholder/pdf/bulletin/w-09038.pdf ("FEMA previously understood and intended its regulations to preempt state law claims related to *policy formation*, renewal and administration arising from allegations of WYO Company error as distinct from agent error . . . . To the extent there are conflicts between Federal and state law, FEMA recognizes that application of state laws would interfere with the implementation of the National Flood Insurance Program and would frustrate the national purpose and scope of the program."). We need not decide whether such an interpretative pronouncement of FEMA, as found in the bulletin, is entitled to any deference—an issue that is complicated by the fact that the pronouncement at issue directly pertains to the

(continued...)

-10-

Thus, we must accept that Ms. Tuua acted as Mr. Remund's agent under federal law, and not as State Farm's agent, and that any false representations she made regarding the extent and scope of the SFIP's coverage are void. Against that legal backdrop, we specifically must examine whether there is a direct conflict—that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress—between, on the one hand, the mandates of § 61.5(e), and, on the other, Mr. Remund's claims under Utah law for estoppel and breach of warranty. We conclude that there is such a conflict. Accordingly, the claims are preempted.

---

[3] (...continued)

subject of preemption. *See Colo. Pub. Util. Comm'n v. Harmon*, 951 F.2d 1571, 1579 (10th Cir. 1991) ("We defer to an administrator's construction of his own regulations unless it is 'plainly erroneous or inconsistent with the regulation.' . . . However, a preemption determination involves matters of law—an area more within the expertise of the courts than within the expertise of the [administrator]." (citations omitted) (quoting *Robertson v. Methow Valley Citizens Counsel*, 490 U.S. 332, 359 (1989))); *see also* Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8353, at 233, 243 (2006) (collecting cases offering different perspectives on "[o]ne of the most venerable doctrines in administrative law" that provides for deference to an administrative agency's interpretation of its own regulations, and noting that "[b]ecause of the federalism concerns, a court might give less deference to an interpretation that results in preemption of state law"). (Curiously, the Fifth Circuit has recently looked to this exact FEMA bulletin in discerning the agency's regulatory intent on another matter, without acknowledging the bulletin's dim view of *Campo*'s reading of the preemptive scope of FEMA's regulations relative to procurement-related claims. *See Grissom v. Liberty Mut. Fire Ins. Co.*, --- F.3d ----, 2012 WL 1383069, at *3 n.2 (5th Cir. Apr. 23, 2012).) Suffice it to say that FEMA's pronouncement in the bulletin concerning the preemptive scope of its regulations—specifically, reading them to preempt so-called procurement-related claims—provides additional support for our *independent* assessment of the import of these regulations.

### 1. *Estoppel*

Mr. Remund's estoppel claim is really a claim that "State Farm . . . is estopped from [asserting] that [Mr. Remund's] claims [under the SFIP] are barred." Aplt. Reply Br. at 5. In other words, it is a claim that State Farm is estopped from denying Mr. Remund coverage under the SFIP. Success on Mr. Remund's estoppel claim would have the effect of expanding coverage under the policy. *See Youngblood*, 158 P.3d at 1094; *see also id.* at 1090 ("[A]n insured may [under some factual circumstances] rely upon principles of equitable estoppel *to enlarge the scope of an insurance policy's coverage* where *the company's agent* materially misstates the scope of coverage prior to the purchase of the policy." (emphasis added)).

But under federal law, Ms. Tuua acted as *Mr. Remund's agent* and not as the insurance company's agent. *See* 44 C.F.R. § 61.5(e). In other words, Mr. Remund and Ms. Tuua were, together, one party to the insurance contract while State Farm, as fiscal agent of the United States, was the other party. Under Utah law, estoppel is only available to a party who has relied to his detriment on misrepresentations made *by another party*. *See Youngblood*, 158 P.3d at 1092. Consequently, State Farm cannot be held liable under a Utah state-law estoppel claim for misrepresentations made by Mr. Remund's own agent. As far as State Farm is concerned, it is as though Mr. Remund made these alleged misrepresentations to himself.

-12-

Utah law, on the other hand, views insurance agents as agents of the insurance company, not as agents of the insured.[4] *See id.* at 1096. Therefore there is an irreconcilable conflict between federal and state law. The only way that Mr. Remund could succeed on his estoppel claim is if federal law were ignored, and state law accepted instead. Accordingly, Mr. Remund's estoppel claim is preempted.

Furthermore, there is a separate and independent ground evincing conflict preemption here. The remedy for an estoppel claim under Utah state law—the expansion of coverage under the insurance policy—is unavailable to Mr. Remund. Under federal law, the scope of the SFIP's coverage cannot be expanded by misrepresentations about the policy's coverage. Again, to the extent that Utah law would mandate a different result—in other words, one that contemplates expansion of coverage under the SFIP—the state law is preempted.

Mr. Remund's claim under Utah law for estoppel cannot coexist with the plain mandates of § 61.5(e); instead, it stands as an obstacle to the

---

[4] In fact, counsel for Mr. Remund acknowledged this conflict between state and federal law at oral argument but asked us to effectively read into the statute additional language that would exclude from consideration any pre-procurement activity. *See* Oral Arg. 7:08–8:18 ("[That under federal law the insurance agent acts as the insured's agent] is completely in conflict with common law agency. . . . My position is that the federal scheme does not extend back before the time the policy is purchased and signed."). However, we decline that invitation. *See Moffett*, 457 F. Supp. 2d at 588–89 ("The distinction between claims handling and procurement fraud . . . appears to this Court to be a distinction without a difference.").

-13-

accomplishment and execution of Congress's intent to shield WYO carriers like State Farm from liability under certain circumstances.  Accordingly, Mr. Remund's estoppel claim is preempted.

### 2. *Breach of Warranty*

To prevail on a breach of warranty claim against State Farm under Utah law, Mr. Remund must show that Ms. Tuua acted as State Farm's agent, because "[a] warranty is an assurance by *one party* to a contract of the existence of a fact upon which the *other party* may rely."  *Groen*, 667 P.2d at 604 (emphasis added). Under Utah law, an insurance agent *does* act as the agent of the insurance company.  *See Youngblood*, 158 P.3d at 1096.  But under federal law, State Farm's insurance agent acted as Mr. Remund's agent and not as State Farm's agent.  *See* 44 C.F.R. § 61.5(e).  Again, Mr. Remund's state-law claim stands as an obstacle to the accomplishment and execution of Congress's intent to shield WYO carriers like State Farm from liability under certain circumstances. Therefore, there is a direct conflict between state and federal law, and Mr. Remund's state-law breach of warranty claim is preempted.

### III. CONCLUSION

Because both of Mr. Remund's state-law claims are preempted, we

**AFFIRM** the judgment of the district court.[5]


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge

---

[5]     Because we conclude that both of Mr. Remund's claims are preempted under the doctrine of conflict preemption, we do not reach the question of whether they are also preempted under express preemption, or whether they otherwise fail as a matter of law. *See, e.g.*, *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010) (concluding that aviation safety is subject to field preemption, and, accordingly, that the court need not reach the question of whether aviation safety is also subject to express preemption).