OPINION **
RESTANI, Judge.
Plaintiffs/Appellants Mahakali Krupa, LLC and its representative Hina Patel (collectively “plaintiffs”) appeal the District Court’s grant of summary judgment to Defendant/Appellee Allstate Insurance Company (“Allstate”) on plaintiffs’ claims relating to Allstate’s failure to pay flood insurance benefits. We will affirm.
I.
Plaintiffs purchased a Subway franchise from Leonard Marconi (“Marconi”) on August 23, 2011. At the time of sale, Marconi held a “contents only” Standard Flood Insurance Policy (“SFIP”) through Allstate. Allstate is a ‘Write-Your-Own” (“WYO”) Program flood insurance carrier participating in the National Flood Insurance Program (“NFIP”). As a WYO company, Allstate is authorized by the Federal Emergency Management Agency (“FEMA”) to issue flood insurance policies in its own name and to administer those policies, but FEMA reimburses it for paid claims. See C.E.R.1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 266, 267 (3d Cir.2004). Policies issued by a WYO company are subject to the National Flood Insurance Act of 1968, the regulations issued under the Act, and the terms and conditions of the Standard Flood Insurance Policy, which is published in the Code of Federal Regulations. 44 C.F.R. § 61.4(a)-(b). Marconi’s SFIP allowed up to $60,000 in recovery. At the closing of the Subway franchise sale, Marconi suggested that he transfer the SFIP to plaintiffs and then contacted his agent, Geor-geanne Purcell (“Purcell”). Plaintiffs later contacted Purcell as well, and allegedly were told that the policy could be transferred to plaintiffs.
On September 8, 2011, plaintiffs’ Subway franchise property sustained flood damage in the amount of $77,105.72. Plaintiffs did not process the paperwork to transfer the policy until after the flood. 'On September 26, 2011, Allstate issued a Flood General Policy Endorsement Declaration indicating that the policy had been changed to Hina Patel’s name effective August 23, 2011. Plaintiffs later submitted a claim seeking the $60,000 limit under the SFIP. Allstate denied the claim on the basis that there was no policy in effect at the time of the flood. Under the terms of the SFIP, the policy could not be transferred because it covered only personal property. 44 C.F.R. Pt. 61, App. A(l), Art. YII(D)(1). Rather, plaintiffs had to purchase a new policy, which did not become effective until October 13, 2011, thirty days after Allstate received the plaintiffs’ application to transfer the policy. 42 U.S.C. § 4013(c) (2012); 44 C.F.R. § 61.11(b)-(c).
Plaintiffs filed suit against Allstate, alleging that the flood damage was a cov *100 ered loss pursuant to the provisions of the flood policy. Plaintiffs later attempted to reframe their complaint to include a tort claim for negligent misrepresentation. Allstate moved for summary judgment. The District Court ultimately concluded that there was no insurance contract between plaintiffs and Allstate at the time of the loss. The District Court also held that Allstate was not estopped from denying coverage. Regarding the misrepresentation claim, the Court held that it failed as a matter of law. First, it determined that the regulations preclude any misrepresentations made by Purcell being imputed to Allstate. Second, the Court noted that Allstate itself did not make any misrepresentations until after the flood, and therefore plaintiffs could not have been relying on those statements at the time of loss.
Plaintiffs appeal the District Court’s grant of summary judgment on them es-toppel argument and their state law misrepresentation claim.[1]
II.
We exercise plenary review of the grant of summary judgment. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir.2013). Summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(a). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party’s favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir.2005).
III.
The District Court held that Allstate could not be held liable for Purcell’s alleged misrepresentations as a matter of law, relying on 44 C.F.R. § 61.5(e). Section 61.5(e) provides:
The standard flood insurance policy is ■ authorized only under terms and conditions established by Federal statute, the program’s regulations, the Administrator’s interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program’s regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent.
The District Court reasoned that Purcell was acting as an agent of the plaintiffs, not as an agent of Allstate, when she allegedly indicated that the plaintiffs would be covered beginning on the date of the sale of the Subway franchise (i.e., August 23, 2011). Because Allstate was the only party sued, and because Purcell’s misrepresentations were the only ones upon which plaintiffs might have relied to their detriment,’ this resolved the issue. Based on the arguments presented to us, we find no error in this reasoning.
*101 The regulation on its face appears to apply squarely to the situation here. Purcell allegedly made a representation that was contrary to the terms and conditions established by the statute, regulations, and express policy terms, by stating that Marconi’s policy could be transferred to plaintiffs and that plaintiffs would be covered from the date of the sale of the Subway franchise. Because Purcell misrepresented the extent to which plaintiffs would be covered (namely, that they would be covered beginning on August 23, 2011, instead of following the thirty-day waiting period once they filed the proper paperwork), the regulation dictates that Purcell was acting as an agent for plaintiffs, not Allstate. See Remund v. State Farm Fire & Cas. Co., 483 Fed.Appx. 403, 408 (10th Cir.2012) (“By creating the legal fiction that an insurance agent ‘acts for the insured,’ instead of for her employer (the private insurance company), § 61.5(e) shields the private insurance company from liability for certain of the agent’s tortious acts.”).
In their brief on appeal, plaintiffs focus solely on the issue of whether state law tort claims related to procurement are preempted as a general matter, arguing that although state claims related to claims handling are preempted, see C.E.R. 1988, 386 F.3d at 272 & n. 12, claims related to procurement are not.[2] Plaintiffs failed to even cite — let alone discuss — 44 C.F.R. § 61.5(e). Allstate then raised the regulation as a bar to their claim in its brief, and plaintiffs failed to file a reply brief addressing this argument. At oral argument, upon questioning by the panel, plaintiffs finally addressed the regulation directly. They made two related arguments as to why the regulation should not apply: first, if there was no policy in effect at the time, of the loss, then the FEMA regulations do not apply; second, if FEMA would not be required to pay any resulting judgment, then the regulation does not apply.[3] Neither argument is persuasive.[4]
First, plaintiffs have cited no authority for their proposition that FEMA regulations do not apply if there was not a valid policy in effect at the time of loss. As a general matter, FEMA regulations often will be integral in answering the question as to whether there was a policy or not. To the extent that plaintiffs argue that FEMA should not be able to use regulations regarding claims handling or specific terms in the policy to defeat a claim when no policy existed, that argument fails with respect to 44 C.F.R. § 61.5(e). Nothing in the plain language of the regulation limits its application to representations made during the handling of claims. In fact, misrepresentations regarding the extent or scope of coverage are likely to occur during the “procurement” phase. Plaintiffs ask us to read a major exception to the plain language of the regulation that simply is not there. We decline such an invitation.
*102 Moreover, plaintiffs have not cited any authority suggesting that FEMA is prohibited from promulgating a regulation that would apply to the procurement of a flood policy. The statute provides that “the Administrator of the Federal Emergency Management Agency is authorized to establish and carry out a national flood insurance program which will enable interested persons to purchase insurance against loss resulting from physical damage to or loss of real property or personal property related thereto arising from any flood occurring in the United States.” 42 U.S.C. § 4011(a). It further provides that “[t]he Administrator is authorized to issue such regulations as may be necessary to carry out the purpose of this Act.” 42 U.S.C. § 4128(a). The statute’s broad grant of rule-making authority certainly appears to give FEMA the power to regulate how policies issued under the NFIP are sold. And if the Administrator determined that shielding WYO companies from liability for certain agent misrepresentations would encourage WYO participation and advance the goals of the program, see Remund, 488 Fed.Appx. at 408 (describing this purpose as a possible policy behind the regulation), the broad grant of rule-making authority in § 4128 would appear to authorize the relevant regulation. The question before us is not whether all state tort claims related to procurement are preempted. The question is whether Allstate can be held liable for the negligent misrepresentations of its agent when the representation concerns the scope or extent' of coverage of a policy. The plain language of the regulation says that Allstate cannot, and the distinction between misrepresentations made during “procurement” and those made during “claims handling” is nowhere to be found in the regulation or the statute.
We also reject plaintiffs’ second argument that the regulation acts as a bar to recovery from the WYO company only when FEMA otherwise would be obligated to pay the resulting judgment. Plaintiffs correctly observe that the arrangement between FEMA and the WYO companies (“the Arrangement”) indicates that FEMA will not reimburse a WYO company “if there is' negligence by the agent.” 44 C.F.R. pt. 62, app. A, art. IX. Whether FEMA pays the resulting judgment, however, does not change the plain language of 44 C.F.R. § 61.5(e). The regulation does not say that it applies only if federal funds are at risk. Again, plaintiffs ask us to insert a limitation into the regulation that does not exist. As explained above, FEMA might have desired to limit the liability of WYO companies for certain claims in order to encourage them to participate in the NFIP. This motivation is divorced from whether FEMA would have to pay the judgment. The fact that FEMA reiterated that it also will not pay for such claims does not undermine our reading .of § 61.5(e). We also note that WYO companies are required to strictly follow the statute, regulations, and SFIP in determining whether claims should be paid under the policy. See C.E.R. 1988, 386 F.3d at 267. Section 61.5(e)’s limitation of liability for the WYO company eliminates to some degree a WYO company’s motivation to agree with the erroneous advice given by an agent, as the WYO company would know that it will not be held responsible for the agent’s initial misrepresentation if the company denies the claim.
Finally, even assuming that Article IX of the Arrangement suggests an acknowl-edgement that WYO companies might be held liable for the negligent actions of their agents in some circumstances, it still does not support plaintiffs’ argument. Section 61.5(e) deals with a very specific type of tortious conduct — misrepresenta *103 tions by the agent regarding the extent or scope of coverage. Assuming arguendo that Article IX suggests that WYO companies can be held liable for the tortious acts of their agents, 44 C.F.R. § 61.5(e) and Article IX can be read together to give effect to both provisions. If the tortious conduct is a misrepresentation concerning the extent or scope of coverage, the WYO company cannot be sued. See 44 C.F.R. § 61.5(e). If the tortious conduct involves some other act, the plaintiff could sue the WYO company, and FEMA would refuse to reimburse the WYO company for those expenses. Our reading does not create an irreconcilable conflict between the two provisions.
In conclusion, plaintiffs’ arguments, made only at oral argument after questioning. by the panel, regarding the District Court’s interpretation and application of 44 C.F.R. § 61.5(e) are unpersuasive. We therefore will affirm the District Court’s grant of summary judgment.
IV.
Even if we had doubts about the proper interpretation and application of 44 C.F.R. § 61.5(e), we still would decline to remand this matter, as the record on summary judgment could not support plaintiffs’ claims of detrimental reliance. The doctrine of equitable estoppel under Pennsylvania law “arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.” In re Estate of Tallarico, 425 Pa. 280, 228 A.2d 736, 741 (1967). To establish the tort of negligent misrepresentation, the plaintiffs must show “(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.” Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 561 (1999). Under either theory, plaintiffs would have to show that they were prejudiced by the misrepresentation. The record, however, is insufficient to support such a claim.
In their opposition to summary judgment and in their brief before the court, plaintiffs allege that
[h]ad they been fully informed by Allstate’s agent regarding the limitations on flood insurance coverage, they could have decided on different options, one of which is not to purchase the property in the flood zone, or use the contents for collateral for a loan which would have permitted immediate assignability of the flood insurance that already existed on the property and contents. Allstate’s agent failed to give the Appellants that option and, as a result, they have suffered a loss of $60,000.00.
Appellant’s Br. 22-23; see also Dist. Ct. Dkt. Entry 22 at 18. We first note that plaintiffs never raised a claim of estoppel or negligent misrepresentation in their complaint. Rather, these claims were raised in plaintiffs’ opposition to Allstate’s motion for summary judgment, and plaintiffs never amended their complaint. Thus, whether plaintiffs even should be allowed to continue pursuing these claims is not entirely clear. Regardless, the record submitted in plaintiffs’ opposition to Allstate’s motion for summary judgment is insufficient to support these assertions.
To the extent that plaintiffs claim that they relied on Allstate’s or Purcell’s misrepresentations in deciding to purchase the Subway franchise, this assertion has no *104 support in the record. Plaintiffs purchased the Subway franchise on August 23, 2011. They, however, did not speak with Purcell until August 26, 2011. They thus could not have been relying on her statement at the time they purchased the franchise: Counsel at oral argument claimed that Marconi, the seller, had spoken to Purcell before the sale closed, that Purcell said that the policy could be transferred, and that Marconi passed this information on to plaintiffs at closing. The deposition testimony cited for this assertion, however, does not support that claim. Gopal Patel testified that Marconi asked him at closing whether plaintiffs desired to take over his flood insurance policy, and that plaintiffs said they were interested. When asked what happened next, Mr. Patel testified: “I think he contacted ... Georgeanne [Purcell].” Nowhere did Mr. Patel testify that Marconi spoke with Purcell before the date of closing, or that Marconi indicated that Purcell assured him that Marconi’s flood policy could be transferred. And plaintiffs failed to depose either the person who allegedly made the misrepresentation (Purcell) or the person who supposedly passed on the alleged misrepresentation (Marconi). Any conclusion that Purcell made a misrepresentation regarding the ability to transfer the policy; before the sale of the franchise closed would be pure speculation. Thus, plaintiffs’ first theory of detrimental reliance fails.
Plaintiffs also contend that, had they known that the policy could not be transferred, they would have taken out a loan using the property as collateral, which would have made the new policy effective immediately upon the closing of the loan. 44 C.F.R. § 61.11(b) provides:
Where the initial purchase of flood insurance is in connection with the making, increasing, extension, or renewal of a loan, the coverage with respect to the property which is the subject of the loan shall be effective as of the time of the loan closing, provided the written request for the coverage is received by the NFIP and the flood insurance policy is applied for and the presentment of payment of premium is made at or prior to the loan closing.
To succeed on this theory, plaintiffs would have to show that Allstate or Purcell made a misrepresentation before the flood occurred on September 8, 2011, and that plaintiffs could have obtained a loan, presented the request for coverage to the NFIP, and paid the insurance premium on or before that date.
Hina Patel testified that plaintiffs had been pre-approved for a bank loan at the time they purchased the Subway franchise, and that if they had known that the policy would become effective immediately only if the property was used as collateral for a loan, they would have taken out such a loan. This' is insufficient to support to plaintiffs’ theory of detrimental reliance. First, as explained above, plaintiffs made the decision to purchase the Subway franchise, and logically to use their own savings instead of a loan, before Purcell made the alleged misrepresentations on August 26. Second, to the extent that plaintiffs could have taken out a loan after purchasing the property by using the property as collateral, there is absolutely no evidence in the record suggesting that they would have been approved for that loan (after having depleted $70,000 of their savings to purchase the property) or that they would have been able to submit an application and premium payment to the NFIP and close on any such loan before the flood occurred on September 8, less than two weeks' after the misrepresentation. Nothing in the record suggests whether this would have been possible, and thus any conclusion on this point in favor of plain *105 tiffs would be based upon speculation. Therefore, their claim based on this theory also fails.
V.
For the reasons set forth above, we will affirm.

 This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

. We note that it is not clear whether plaintiffs actually preserved their appeal of the estoppel argument. Counsel at oral argument stated that this claim was also appealed, but plaintiffs’ appellate brief makes only a single reference to estoppel in the argument section. Otherwise, plaintiffs refer to “state law tort principles,” their “tort claims,” Purcell’s "negligent misrepresentations,” or their "negligent representation claims.” Because their estoppel argument fails for the same reasons as their negligent misrepresentation claim, we need not decide whether plaintiffs waived the issue by failing to adequately raise • it in their appellate brief.

. The District Court explicitly declined to rule on this question, basing its decision solely on 44 C.F.R. § 61.5(e)'s effect on plaintiffs’ theory of vicarious liability.

. Plaintiffs did not contest that Allstate was a "servicing agent” that would be shielded from liability under 44 C.F.R. § 61.5(e), assuming the regulation applies. Plaintiffs also did not contest that the misrepresentation went to the scope or extent of coverage.

.Because we determine that this case can be resolved on the basis of 44 C.F.R. § 61.5(e), we need not decide whether state law claims related to procurement are preempted as a general matter. Cf. Campo v. Allstate Ins. Co., 562 F.3d 751, 752 (5th Cir.2009) (holding that state law claims related to policy procurement are not preempted by federal law). Rather, we hold only that plaintiffs' theoiy of vicarious liability for the particular tortious conduct in this case is precluded by the regulation.