COWEN, Circuit Judge,
dissenting.
The majority today puts the analytical cart before the horse. In its zeal to avoid answering the central question of preemption in this case, it applies a federal regulation that, if Appellants’ claims are not preempted by federal law, it should not apply. Because I conclude that Appellants’ claims are not preempted and that reference to the federal regulations in this regard is therefore inappropriate, I respectfully dissent.
A. Preemption
The question at the heart of this matter is one we expressly left open in C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 271 n. 12 (3d Cir.2004): whether a state law claim of negligent misrepresentation arising in the procurement of national flood insurance is preempted by federal law. If Appellants’ claims are not preempted, we should apply the substantive law of Pennsylvania. If Appellants’ claims are preempted, federal law governs and it is appropriate to look at the applicable federal regulations. Preemption is therefore the only logical place to begin our analysis.
In 1983, pursuant to regulatory authority granted by Congress, FEMA created the “Write Your Own” (“WYO”) program. Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 165 (3d Cir.1998). Under this program, Allstate, as a private insurance company, enters into an arrangement (the “Arrangement”) with the Federal Emergency Management Agency (“FEMA”), whereby the insurance company agrees to issue a standard flood insurance policy (“SFIP”) under its logo. C.E.R. 1988, Inc., 386 F.3d at 267. The Arrangement and the SFIP are codified federal laws. See 44 C.F.R. Pt. 62, App. A (Arrangement), and 44 C.F.R. Pt. 61, App. A(1) (SFIP).
As we noted in C.E.R. 1988, Inc., the “overarching purpose” of the National Flood Insurance Program (“NFIP”) is “to provide affordable flood insurance in high-risk areas in order to reduce pressures on the federal fisc.” 386 F.3d at 265. Thus, if Appellants’ state law claims do not implicate public government funds, there is little reason to believe Congress intended to preempt them. See id. at 268 (noting that “‘Congress would want federal courts to adjudicate disputes over federal flood insurance policies for which the federal government would be responsible.’ By the same token, Congress would want federal law to govern those disputes. And what Congress intends is the crux of our preemption analysis.”) (quoting Van Holt, 163 F.3d at 167) (emphasis added).
Although it is generally true that Allstate, in its role as fiscal agent of the government, will not have its own money at stake, the Arrangement contemplates circumstances in which the federal government will refuse to reimburse the WYO insurer for- its costs. Specifically, Article 111(D)(3)(a) of the Arrangement, entitled “Limitation of Litigation Costs,” provides that if the FEMA Office of the Chief Counsel (“OCC”) “finds that the litigation is grounded in actions by the Company [here, Allstate] that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence, then the FEMA OCC shall make a recommendation to the FIA regarding whether all or part of the litigation is significantly outside the scope of the Arrangement.” 44 C.F.R. *106 Pt. 62, Art. 111(D)(3)(a) (emphasis added). This strongly suggests that FEMA views issues of agent negligence as akin to actions “significantly outside the scope of this Arrangement,” that will not ordinarily be reimbursed. Similarly, I find the language of Article IX of the Arrangement, entitled “Errors and Omissions,” highly instructive. 44 C.F.R. Pt. 62, App. A, Art. IX. Although Article IX applies in circumstances where a WYO company’s negligence leads to a claim against it, but not litigation, it contains arguably stronger language than Article 111(D)(3)(a). Article IX states that “(i) if the claim against the Company is grounded in actions significantly outside the scope of this Arrangement or (ii) if there is negligence by the agent, FEMA will not reimburse [the Company] any costs incumd due to that negligence. The Company will be notified in writing within thirty (30) days of a decision not to reimburse.” Id. (emphasis added).
Thus, unlike Article 111(D)(3)(a), which states that in litigation involving the negligent acts of agents, FEMA will make a recommendation as to whether the litigation is in whole or in part outside the scope of the Arrangement, Article IX states that in claims arising from the negligent acts of agents, FEMA will simply refuse reimbursement. But despite the slight variations in language, taken together, these provisions establish that, in the ordinary course, FEMA will not reimburse WYO companies for claims arising from the allegedly negligent acts of their agents. The majority and I are in agreement on this point. (See Majority Op. at 102 (noting that Appellants “correctly observe that the arrangement between FEMA and the WYO companies [] indicates that FEMA will not reimburse a WYO company ‘if there is negligence by the agent.’ ” (citing 44 C.F.R. pt. 62, app. A, art. IX).)
The Arrangement, however-, draws no distinction between claims handling and procurement. Prior to 2000, the Arrangement could therefore have been fairly read to imply that regardless of whether the alleged negligence occurred during the procurement of a policy or during the handling of a claim, reimbursement might be equally unavailable. But in 2000, FEMA amended the language of the SFIPs, which are codified at 44 C.F.R. Pt. 61, App. A(l), A(2), and A(3). This change, which occurred after the debate over the procurement/claims handling distinction was already underway, amended the language of the SFIPs to include the following: “This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968 ... and Federal common law.” 44 C.F.R. pt. 61, app. A(l), art. IX (emphasis added).
The effect of the change is that Congress explicitly preempted all state law claims — including those based on agent negligence — if they are related to claims handling. It seems very unlikely that FEMA would specify only that the “handling of any claim” would be governed exclusively by the flood insurance regulations if it also intended to preempt procurement-related claims. See C.E.R. 1988, Inc., 386 F.3d at 269 n. 6 (noting that the “principal differences between the current provision and its predecessor are the addition of the term “exclusively” and the express inclusion of disputes arising from claims handling.”).
In light of the purpose of the NFIP to guard the public fisc, FEMA’s decision to carve out exceptions to its reimbursement policies based on claims arising from agent negligence, and FEMA’s 2000 amendment to the SFIP preempting only state law claims related to the “handling of claims,” *107 both the statute and the regulations evince an intent that procurement-related claims not be preempted by federal law. See Campo v. Allstate Ins. Co., 562 F.3d 751, 758 (5th Cir.2009) (concluding that procurement-related flood insurance claims were not preempted because.the principal purpose in enacting the NFIP was to “reduce ... the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance,” and FEMA “does not reimburse carriers for procurement-related judgments.”) (alteration in original) (citation omitted). We should therefore apply Pennsylvania law to resolve Appellants’ claims.
B. U C.F.B. § 61.5(e)
To circumvent the question of preemption and avoid an otherwise straightforward application of Pennsylvania state law, the majority relies on 44 C.F.R. § 61.5(e). That regulation, entitled “Special terms and conditions,” provides that “representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program’s regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act for the Federal Government, [FEMA], or the servicing agent [here, Allstate].” 44 C.F.R. § 61.5(e) (emphasis added). The majority reasons that because Allstate’s insurance agent [Purcell] was acting on behalf of Appellants, any claim would have to proceed against that agent, and not the WYO insurer. Because Appellants failed to bring a suit against Purcell, the majority continues, their claims necessarily fail.[1] I disagree.
The problem with the majority’s reasoning is inherent in its decision to bypass the preemption analysis. Only upon resolution of the preemption issue, can we properly determine whether a particular federal regulation applies. Because, for the reasons I have already articulated, I conclude that Appellants’ procurement-related state law claim is not preempted, consideration of that claim should be conducted pursuant to Pennsylvania law without regard to section 61.5(e).
The majority faults Appellants for citing no authority for the proposition that FEMA regulations do not apply in the absence of a valid policy. (Majority Op. at 101-02.) But this turns the analysis on its head. As we have indicated on prior occasions, the purpose of the NFIP was to reduce pressures on the federal fisc. See G.E.R.1988, Inc., 386 F.3d at 265. In the absence of any claim that implicates federal funds, there is no reason to believe that Congress had any interest in limiting the liability of WYO insurers. See Gibson v. Am. Bankers Ins. Co., 289 F.3d 943, 953, 955 (6th Cir.2002) (Moore, J. concurring in part and dissenting in part) (noting that the federal regulations envision that litigation costs related to “negligence” will arise from state-law tort claims and are not reimbursable under the NFIP and explaining that the argument that insurers like Allstate would refuse to participate in the system unless they are insulated from such state-law tort claims “fails to take account of the fact that insurers are ordinarily *108 subject to [such] claims,” and there is no reason why “subjecting WYO insurers to the same rules to which they are normally subject would affect their behavior.”).
Indeed, although not a preemption case, this very analysis was rejected by the Fifth Circuit in Spence v. Omaha Indem. Ins. Co., 996 F.2d 793, 797 (5th Cir.1993). There, the Court declined to read 44 C.F.R. § 61.5(i) — now 44 C.F.R. § 61.5(e) — as absolving WYO insurers from tort liability for misrepresentations of then- agents. Instead, it concluded that the regulation, “read as a whole, plainly evinces an intent to prevent expansion of SFIP coverage through misrepresentations by private parties involved with the program, thereby protecting the government from expanded liability. We decline to accept a reading of that provision immunizing WYO companies from liability for the tortious conduct of their agents.” Id. (emphasis added). As the Fifth Circuit aptly noted, when section 61.5(e) is read in the broader context of the NFIP, it becomes clear that it was the government’s concern with guarding public funds that led it to limit its own liability regarding the negligent misrepresentations of WYO insurers’ agents. It did not intend to interfere with procurement-related state law claims, the liability for which would be borne by the WYO insurers.
Moreover, the majority’s attempt to limit its holding today is unavailing. It asserts that section 61.5(e) prevents procurement-related claims arising from agent misrepresentations regarding only the extent or scope of coverage. (Majority Op. at 102-03.) But it is hard to imagine what other claims might be brought in the procurement context if not those for misrepresenting the extent and scope of coverage. Indeed, by concluding that such claims against the WYO insurer are barred by section 61.5(e), the majority eviscerates the distinction between claims arising from procurement and those arising from “claims handling” without even addressing the central question. The practical effect will be that few, if any, claims of misrepresentation arising from agent negligence in the procurement context will ever succeed, because the representations most likely to be made to convince individuals to obtain flood insurance will of course pertain to the extent and scope of coverage. This clearly was not the intent of FEMA when it drafted its regulations to carve out an exception to its reimbursement plan of WYO insurers for the negligent acts of these insurers’ agents. By sending the message that such claims would not implicate federal funds, and were thei-efore not preempted, the government wished to ensure that such claims against WYO insurers could proceed. The majority’s decision today frustrates that intent.
C. The Merits of Appellants’ State Law Claim
Applying Pennsylvania law, I note that the record is sufficient for Appellants’ negligent misrepresentation claim to survive summary judgment and I would remand the matter to the District Court.
To establish the tort of negligent misrepresentation, the plaintiffs must show “(1) a misrepresentation of a material fact; (2) made under circumstances in which the individual making the representation ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.” Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 561 (1999).
Pennsylvania law does not require that the misrepresentation be made directly to the individual asserting the claim. Rather, courts have indicated that the misrepresentation may be communicated indirectly *109 to the recipient through a third party. In the context of negligent misrepresentation, the statement maker’s liability is more narrow than in cases of fraudulent misrepresentation, and the maker will be liable only if he or she intended the misrepresentation to be repeated to the recipient and for the recipient to rely on it. Woodward v. Dietrich, 378 Pa.Super. 111, 548 A.2d 301, 309 (1988).
As this comes to us on a. motion for summary judgment we must view the facts in a light most favorable to Appellants. Here, Appellants have successfully met the requirements. First, there is no dispute that Purcell misrepresented whether the flood insurance would transfer. Second, as Allstate’s agent, she ought to have known its falsity. Third, it is arguable on the record before us that a direct misrepresentation was made to the plaintiff corporation. But even if there was no such misrepresentation, given that no direct misrepresentation is required under Pennsylvania law, a reasonable factfinder could conclude that Purcell’s misrepresentation to either the previous owner or to a different partner in the plaintiff corporation was intended to be repeated to Plaintiff Hina Patel.
Fourth, as a result of Purcell’s misrepresentations, Appellants argue they were foreclosed from using the contents of their property for collateral for a loan which would have permitted immediate assigna-bility of the flood insurance that already existed on the property and contents. As Plaintiff Hina Patel testified, Appellants decided not to use the contents as collateral and to instead use their own personal savings because “[w]e didn’t know that the clause for the flood that — we could have got the loan if we knew that the flood was a factor.” (App. 109a.) Indeed, Patel testified that they “had a pre-approval from PNC Bank, so it wasn’t a problem to get a loan, but since we had our own personal savings, we just didn’t want to go forward with the loan, but if we knew back then that our flood insurance policy would be active only if the loan is there, then we would have had to protect our business.” (Id.) On this record, I believe Appellants have presented sufficient evidence to survive summary judgment and I would remand the matter to the District Court for further proceedings.
D. Conclusion
In light of the foregoing, I would remand the matter to the District Court for proceedings consistent with this opinion.

. I note that the majority refers to the Tenth Circuit’s non-precedential opinion in Remund v. State Farm Fire & Cas. Co., 483 Fed.Appx. 403, 408 (10th Cir.2012). But in Remund, the Tenth Circuit looked primarily to section 61.5(e) to conclude that procurement-related claims were preempted. Id. Although I do not find the Tenth Circuit’s opinion persuasive on the issue of preemption as it simply ignored the statutory purpose and regulatory text that undermines its conclusion, the Court recognized that it had to address the issue of preemption before it simply applied section 61.5(e) to the state law claims at issue. Id. at 407-09.