**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1935**

GARY WOODSON; REBECCA WOODSON,

Plaintiffs - Appellees,

v.

ALLSTATE INSURANCE COMPANY,

Defendant - Appellant.

--------------------------------------

UNITED STATES OF AMERICA; PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA,

Amici Supporting Appellant,

DOUGLAS J. PEPE,

Amicus Supporting Appellees.

**No. 16-2018**

GARY WOODSON; REBECCA WOODSON,

Plaintiffs - Appellees,

v.

ALLSTATE INSURANCE COMPANY,

Defendant - Appellant.

----------------------------------------

UNITED STATES OF AMERICA; PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA,

Amici Supporting Appellant,

DOUGLAS J. PEPE,

Amicus Supporting Appellees.

_____

Appeals from the United States District Court for the Eastern District of North Carolina, at Elizabeth City.  Terrence W. Boyle, District Judge.  (2:13−cv−00021−BO)

_____

Argued:  March 24, 2017                                  Decided:  May 3, 2017

_____

Before NIEMEYER, MOTZ, and DIAZ, Circuit Judges.

_____

Reversed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Motz and Judge Diaz joined.

_____

**ARGUED:** Gerald Joseph Nielsen, NIELSEN, CARTER & TREAS, LLC, Metairie, Louisiana, for Appellant.  Ernest Bradley Evans, WARD AND SMITH, P.A., Greenville, North Carolina, for Appellees.  Nicolas Y. Riley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States of America.  **ON BRIEF:** Keith M. Detweiler, John D. Carter, NIELSEN, CARTER & TREAS, LLC, Metairie, Louisiana; Eric P. Stevens, POYNER SPRUILL, LLP, Raleigh, North Carolina, for Appellant.  Michael J. Parrish, WARD AND SMITH, P.A., Greenville, North Carolina, for Appellees.  Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Michael S. Raab, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Adrian Sevier, Chief Counsel, Razeyeh Jafarzadeh, Office of Chief Counsel, FEDERAL EMERGENCY MANAGEMENT AGENCY, Washington, D.C.; John Stuart Bruce, Acting United States Attorney, Raleigh, North Carolina, for Amicus

United States of America. Wystan M. Ackerman, ROBINSON & COLE LLP, Hartford, Connecticut, for Amicus Property Casualty Insurers Association of America. Douglas J. Pepe, Amicus Pro Se.

_____

NIEMEYER, Circuit Judge:

Hurricane Irene, characterized as a Category 1 hurricane when it hit the North Carolina coast on August 27, 2011, passed near the waterfront house of Gary and Rebecca Woodson on the Albemarle Sound in Jarvisburg, North Carolina, flooding their property and, for several hours, subjecting the foundation of their house to wave action, allegedly causing substantial damage to the house. Shortly after the storm, the Woodsons made a claim under the flood insurance policy issued to them by Allstate Insurance Company under the National Flood Insurance Program.

Following inspections of the property by engineers hired by both parties and exchanges relating to the appropriate documentation for a proof of loss, Allstate denied the major portion of the Woodsons' claim by letter dated February 28, 2012, and the Federal Emergency Management Agency ("FEMA") affirmed the decision. The Woodsons commenced this action against Allstate in state court on February 27, 2013, alleging (1) that, in denying the major portion of their claim, Allstate breached its contract of insurance, and (2) that Allstate did not act in good faith in handling the Woodsons' claim, in violation of the North Carolina Unfair and Deceptive Trade Practices Act.

On April 1, 2013, Allstate removed the case to federal court and, in its answer filed thereafter, asserted that the Woodsons' suit was barred by the applicable statute of limitations. Allstate raised the limitations defense again in the pretrial order entered in the case, in the proposed findings of fact and conclusions of law presented by the parties to the court one week before trial, and in the examination of witnesses at trial. The

4

district court, however, did not address the limitations issue in its findings of fact and conclusions of law and entered judgment for the Woodsons in the amount of $233,398 on their breach of contract claim and trebled those for a total of $700,194 on their bad-faith-handling claim under the North Carolina Unfair and Deceptive Trade Practices Act. The court also awarded the Woodsons $63,962.50 in attorneys fees on the bad-faith-handling claim.

On appeal, Allstate raises, as its first issue, its statute of limitations defense. It also raises the issue of whether the Woodsons' bad-faith-handling claim was preempted by the National Flood Insurance Act of 1968.

Because federal law exclusively governs claims made on policies issued under the National Flood Insurance Program and to disputes arising out of the handling of those claims, thus preempting state law, and imposes a one-year statute of limitations for all such claims, we reverse the district court's judgment.

I

A

Responding to the fact that flood disasters were creating personal hardships and economic distress that was "increasing [the] burden on the Nation's resources" and that the exposure to flood losses was "growing," Congress enacted the National Flood Insurance Act of 1968 ("NFIA"). 42 U.S.C. § 4001(a). The NFIA creates the National Flood Insurance Program under the administration of FEMA to "mak[e] flood insurance coverage available on reasonable terms and conditions." *Id*.; *see also id.* § 4011. Under the Program, flood insurance is sold to qualified applicants either directly by FEMA or

5

by private insurance companies known as "write-your-own" (sometimes, "WYO") companies. 44 C.F.R. § 62.23. These companies enter into a standardized agreement with FEMA that authorizes the private company to issue flood insurance in its own name and assigns the company responsibility for the "the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program." *Id.* § 62.23(d). The ultimate responsibility for paying all claims and related expenses, however, rests with FEMA. *See* 42 U.S.C. § 4017(a). The NFIA imposes a $250,000 cap in coverage for residential properties. *Id.* § 4013(b)(2).

The terms and conditions of a National Flood Insurance Policy are specified by regulation. The "Standard Form Insurance Policy" begins with advice to the insured that FEMA is providing insurance "under the terms of the National Flood Insurance Act of 1968 and its Amendments, and Title 44 of the Code of Federal Regulations." 44 C.F.R. pt. 61 app. A(1), art. I. The Policy then sets forth the scope of coverage, the exclusions, the deductions, and the general conditions applicable to coverage, adjustment, and payment. The Policy also provides:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, *et seq.*), and Federal common law.

*Id.* art. IX. Consistent with the statute and regulation, the Policy also provides the conditions and limitations for filing suit for claims under the Policy and on disputes arising out of the handling of any claim under the Policy:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must

6

start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

*Id.* art. VII(R); *see also* 42 U.S.C. § 4072; 44 C.F.R. § 62.22.

In short, National Flood Insurance Policies, claims under those Policies, and disputes relating to the handling of claims under those Policies are highly regulated and subject exclusively to federal law.

B

Gary and Rebecca Woodson purchased their National Flood Insurance Policy through Allstate, a write-your-own insurance company, to insure their waterfront home in Jarvisburg. As mandated by statute, the Policy provided the Woodsons with $250,000 in coverage for their house and $12,200 for personal property, and included a $1,000 deductible.

Shortly after Hurricane Irene struck the Woodsons' house on August 27, 2011, the Woodsons called Allstate, which promptly inspected their property. Following the initial visit, Allstate retained the engineering firm of Rimkus Consulting Group, Inc., to inspect the Woodsons' property and give Allstate a report as to the extent and cause of the damage. The Rimkus report concluded that, other than a substantial loss of soil washed away from around the supporting portions of the house, there was "no damage or permanent movement of the structure." The report recommended reimbursement for the replacement of the washed out soil at a cost under $1,200.

7

The Woodsons retained their own engineering firm, House Engineering, P.C., which submitted a report describing substantial damage caused by the hurricane, including movement of the house's pilings that caused the house no longer to be level. The Woodsons sent the report to Allstate in support of their proof of loss, claiming $228,822.08 in damages. Based on a subsequent report by House Engineering, the Woodsons increased that claim to $272,473, which included $33,075 for bulkhead repairs, an item concededly not covered by the National Flood Insurance Policy.

After evaluating the House Engineering report, Allstate sent the Woodsons a letter dated February 28, 2012, denying their claim for foundation damage. Allstate attached to its denial letter a revised version of the Rimkus report, which addressed the conclusions reached in the House Engineering report and disagreed with them. In its letter, Allstate advised the Woodsons that they could appeal the denial of coverage to FEMA.

The Woodsons did in fact appeal the denial of coverage to FEMA, and after review, FEMA advised the Woodsons that there was "no reason" to "overturn Allstate's denial of your claim of foundation damages." In particular, FEMA found that the findings of the Rimkus report were more compelling than those of the House Engineering report.

On February 27, 2013, the Woodsons filed a complaint in North Carolina state court against Allstate for breach of the insurance contract and for violation of the North Carolina Unfair and Deceptive Trade Practices Act. Allstate removed the case to federal court on April 1, 2013.

8

After a bench trial, the district court found as fact that the damage to the Woodsons' property was caused by "flooding, wave action, and erosion." In reaching its finding, the court credited the testimony of Frederick A. House, president of House Engineering, and another engineer, George R. Barbour, and did not credit the Rimkus report. The court further found as fact that damages of $233,398 were appropriate for the breach-of-contract claim. The court then determined, as a matter of law, that the damages were covered by the terms of the Standard Flood Insurance Policy issued by Allstate under the National Flood Insurance Program. On the Woodsons' second count, that Allstate had violated the North Carolina Unfair and Deceptive Trade Practices Act, the court found as fact that Allstate denied the Woodsons' claim in bad faith, in violation of N.C. Gen. Stat. § 75-1.1 *et seq.* The court characterized Allstate's behavior as "the worst kind of misconduct" and found that Allstate had used the Rimkus report to "thwart" the Woodsons' claim. Accordingly, the court trebled the damage figure found in connection with the breach-of-contract claim for a total award on the bad-faith-handling claim in the amount of $700,194. The court also granted the Woodson's post-trial motion for attorneys fees under state law in the amount of $63,962.50.

Allstate filed appeals from the district court's judgment on the merits dated May 4, 2016, and from the court's award of attorneys fees dated August 23, 2016, and we consolidated the two appeals by order dated September 7, 2016.

II

Allstate contends first that the Woodsons' breach-of-contract claim is barred by the one-year statute of limitations stated in 42 U.S.C. § 4072 and 44 C.F.R. § 62.22, as

9

well as in the Standard Form Insurance Policy itself, as set forth at 44 C.F.R. pt. 61, app. (1), art. VII(R).

The contextual facts for Allstate's limitations defense are not disputed. On August 27, 2011, the eye of Hurricane Irene passed near the Woodsons' waterfront house, flooding the property and subjecting its foundation to storm surge and wave action for hours. The next day, the Woodsons called Allstate, which promptly thereafter inspected the property. After inspections made by Allstate and by its retained engineers, Allstate sent the Woodsons the letter dated February 28, 2012, stating, "We must regretfully deny coverage for the damage to your foundation you are claiming." Allstate accepted coverage for a very small portion of the damage involving replacement of soil around the foundation.

The parties do not dispute that this letter constituted a denial of coverage letter.

Just under one year later, on February 27, 2013, the Woodsons filed a complaint against Allstate in North Carolina state court, alleging breach of its insurance policy and the bad faith handling of their claims. Allstate removed the case to federal court on April 1, 2013, with the effect that the complaint was not filed in federal court until more than one year after Allstate Insurance denied coverage.

On the basis of these facts, Allstate contends that because the Woodsons' complaint was not filed in a U.S. District Court within one year of the denial of coverage, as required by NFIA and its regulations, their breach-of-contract claim was therefore time barred. We agree.

The requirement of filing a lawsuit in U.S. District Court within one year of the insurer's denial of coverage is made explicit not only in the NFIA, but also in the regulations promulgated pursuant to it and in the Standard Form Insurance Policy issued by Allstate to the Woodsons. Section 4072 of Title 42 provides that a claimant may, "within one year after the date of mailing of notice of disallowance or partial disallowance," institute an action on its claim "in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action." The regulations parrot that requirement, providing that the claimant may, "within one year after the date of mailing by . . . . the participating Write-Your-Own Company . . . of the notice of disallowance or partial disallowance[,] . . . institute an action on such claim against the insurer *only in* the U.S. District Court for the district in which the insured property or the major portion thereof shall have been situated." 44 C.F.R. § 62.22 (emphasis added). Finally, the language of the Standard Flood Insurance Policy issued by Allstate to the Woodsons requires the same result in readable language:

> If you do sue [us], you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

44 C.F.R. pt. 61, app. (1), art. VII(R).

11

The aggregate of these provisions thus establishes (1) that the limitations period of one year begins to run from the date all or part of the claim is denied; (2) that the action may be filed *only* in a U.S. District Court; (3) that the U.S. District Court must be where the property is located; and (4) that these requirements and restrictions apply not only to "any claim . . . under the policy," but also to "any dispute . . . arising out of the handling of any claim under the policy." Because the Woodsons failed to file their complaint in U.S. District Court within one year of Allstate's denial-of-coverage letter dated February 28, 2012, their claims — one for breach of the policy and one for the bad faith handling of their claim under the policy — are barred by the statute of limitations.

To avoid the limitations bar, the Woodsons argue that the federal statute of limitations of the NFIA should be tolled by their filing of a complaint in state court, which did occur within one year of the denial-of-coverage letter. This argument, however, is foreclosed by our decision in *Shofer v. Hack Co.*, 970 F.2d 1316 (4th Cir. 1992). In *Shofer*, the plaintiff *timely* filed an ERISA claim in Maryland state court, which dismissed the claim because jurisdiction for the claim lay exclusively in federal court. The plaintiff then filed his claim in federal court, *but after the limitations period had run*. In response to the defendant's motion for summary judgment based on limitations, the plaintiff asserted that his timely filed state action "should equitably toll the running of the statute of limitations under federal tolling principles." *Id.* at 1318. We rejected that argument, holding that "[t]he commencement of an action in a clearly inappropriate forum, a court that clearly lacks jurisdiction, will not toll the statute of limitations." *Id.* at 1319. Likewise, in this case, the Woodsons' argument that their filing

12

in North Carolina state court, one that because of the NFIA clearly lacked jurisdiction, should equitably toll the federal one-year statute of limitations must be rejected. The Woodsons' filing in state court was no more meaningful than the similar state court filing in *Shofer*. And because the state court lacked jurisdiction, the fact that the action was subsequently removed to federal court, rather than dismissed has no impact on the running of the statute of limitations. *See Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (4th Cir. 2002).

The Woodsons also argue that Allstate Insurance waived its statute of limitations defense by not adequately presenting it to the district court. They state, "Allstate failed to sufficiently raise the [limitations] defense before the District Court, and the District Court had no opportunity to consider or rule on it." Neither the facts of record nor the law, however, supports this argument.

To be sure, as a general matter, the defense of limitations must be raised by an affirmative defense presented in the answer or an amendment to the answer or it will be "forfeited." *See* Fed. R. Civ. P. 8(c)(1); *Wood v. Milyard*, 132 S. Ct. 1826, 1832 (2012). Such a forfeiture is not absolute, and, in "exceptional circumstances," the defense may be considered on appeal. *Wood*, 132 S. Ct. at 1833–34. On the other hand, the defense may be "waived" by conscious and deliberate conduct indicating the wish not to present the defense or by the conscious and deliberate failure to present the defense, in which case the court's consideration of the defense would be "an abuse of discretion." *Id.* at 1834–35. Such a waiver may be indicated when the party fails to present the defense "in a manner sufficient to alert the district court" to it. *CoreTel Virginia, LLC v. Verizon*

13

*Virginia, LLC*, 808 F.3d 978, 988 (4th Cir. 2015) (internal quotation marks and citation omitted).

In this case, the facts support neither a forfeiture nor a waiver. As the Woodsons concede, Allstate did raise its statute of limitations defense in its answer. The Woodsons nonetheless contend that after raising the defense in its answer, Allstate waived it by never again or not sufficiently presenting it to the court. Unfortunately for the Woodsons, the record does not support that factual claim.

First, in the amended pretrial order submitted to the district court by the parties and entered by the court to control the trial, the Woodsons set forth their contention that "Plaintiffs thereafter initiated this action *within the applicable limitations period*." In the same pretrial order, Allstate presented the court with the factual issue of "whether Plaintiffs' claim is time barred." The same order set forth the legal issues that the court had to resolve at trial, including the issue of "whether Plaintiffs' claims are time barred."

At trial, the Woodsons argued that Allstate's January 23, 2012 letter, which rejected as inadequate the Woodsons' proof of loss, was not a denial of coverage so as to start the running of the limitations period and that only Allstate's February 28 letter was a denial of coverage. That letter, they suggested, protected their filing date in state court on February 27, 2013 (one day before the expiration date of the limitations period). Allstate maintained that the January 23 letter was indeed a denial of coverage as was the February 28 letter. Relevant to this dispute, both parties introduced the January 23 and February 28 letters as exhibits. Allstate pursued the issue further during its own examination of Gary Woodson:

14

Q. Please turn the page to Defendant's Exhibit [2] which is also Plaintiffs' Exhibit Number [6].

A. Okay.

Q. In this February 28, 2012, letter from Allstate, they are denying the claim again, are they not?

A. I believe this would be the first time.

Q. So when I asked you in your deposition whether or not you considered the January 23 rejection of proof of loss to be a denial, do you remember what your answer was?

A. No sir.

When Allstate's counsel showed Woodson his deposition testimony, Woodson stated that any suggestion he gave that the January 23 letter was a denial letter resulted from "a misunderstanding" of the questions he was answering. Thereafter, the Woodsons continued to press their argument that the February 28 letter was the first denial of coverage. Moreover, Allstate's witness thereafter also testified that the February 28 letter was a denial of coverage. The status of the January 23 letter is not material here; what is material is that both parties were addressing the limitations question at trial before the district court.

The presence of the limitations issue at trial was confirmed by the Woodsons' argument to the district court during closing argument. They argued to the court:

> There are cases that specifically discuss the distinction between a Proof of Loss rejection and a denial of the claim. *The reason that that is relevant has to do with the statute of limitations*, Your Honor. Here we don't have the problem because there was no denial prior to the running of the statute of limitations. So given the fact that that January 23 letter was not a denial of the claim, and the denial of the claim has to be clear and unequivocal under state law, under the applicable law, and clearly that doesn't apply here. As a result, there was no denial, *there is no statute of limitations issue*.

(Emphasis added).

15

This evidence and these arguments at trial relating to the limitations defense did not come as a surprise. To the contrary, both parties told the district court one week before trial that limitations remained an issue. In its proposed findings of fact, Allstate requested a finding that "on January 23, 2012, Allstate issued a denial letter to the Plaintiffs notifying them that their claim was denied due to failure to produce supporting documentation as required under the terms and conditions of their [policy]." They also proposed a finding that "as a result, on February 28, 2012, Allstate issued *[its] denial letter* to the Plaintiffs to notify them *that their claim for damages to the foundation were denied* and determined not to be covered by the Plaintiffs' [policy]." Finally they proposed that the court find that "Plaintiffs *filed their lawsuit more than one year* from the date of the original denial of their claim, therefore *this suit is time barred*." In its proposed conclusions of law, Allstate again asked the district court to conclude that "Plaintiffs filed their lawsuit more than one year from the date of the original denial of their claim, [and] therefore this suit is time barred." Finally, in its memorandum of law, also submitted to the court one week before trial, Allstate argued:

> Article VII(R) of the Plaintiffs' [policy] states that "If you do sue, you must start the suit within 1 year after the date of the written denial of all or part of the claim. . . . This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy." Plaintiffs filed their lawsuit more than one year from the date of the original denial of all or part of their claim, therefore this suit is time barred.

Later, in the same memorandum, they again asserted that the Plaintiffs filed their lawsuit *more than one year from the date of the original denial of their claim*, "therefore *this suit is time barred*." (Emphasis added throughout). That memorandum of law filed on behalf

16

of Allstate was the only memorandum of law considered by the court before it ruled from the bench at the close of trial. Thereafter, the court issued its written opinion.

When the court filed its findings of fact and conclusions of law, however, it did not even recognize the existence of the February 28 letter, much less address it as part of the limitations defense. Indeed, it did not address the statute of limitations defense at all. While the parties were, up to that point, clearly engaged on the issue of whether Allstate's January 23 letter or its February 28 letter effectively denied coverage for purposes of the statute of limitations, the court did not address that dispute or the consequences of resolving it.

While Allstate would have been wise to present its limitations defense through a separate motion filed earlier in the proceedings, the Woodsons cannot fairly contend that Allstate deliberately abandoned the defense so as to have waived it. In defending this case, Allstate focused more on defending the charges against it relating to its bad faith handling of the claim than on concluding the case more efficiently by pressing for early resolution of its defense that the Woodsons' claims should be dismissed under the applicable statute of limitations. Nonetheless, on the record here, Allstate cannot be charged with deliberately waiving the defense. The district court was presented with the limitations issue and the relevant evidence, and the Woodsons were undoubtedly aware that the issue was before the court, as they addressed it explicitly during closing argument. We thus conclude that the defense was sufficiently preserved for review on appeal.

17

III

Allstate contends that the Woodsons' claim against it for bad faith handling of their claim, under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*, was preempted by federal law and therefore barred. We agree.

The insurance policy that the Woodsons purchased was fully regulated by federal law such that state law could not govern claims under the policy or disputes involving the bad faith handling of those claims. The Standard Form Insurance Policy, set forth as Appendix A to Part 61 of Title 44 of the Code of Federal Regulations, to which the Woodsons agreed, made clear that FEMA was providing insurance to the insured "under the terms of the National Flood Insurance Act of 1968 and its Amendments, and Title 44 of the Code of Federal Regulations." The Policy also mandated the *exclusive* application of federal law in connection with all claims made under the Policy and all disputes related to the handling of a claim under the Policy:

> This Policy and all disputes arising from the handling of any claim under the Policy are governed *exclusively* by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, *et seq.*), and federal common law.

44 C.F.R. pt. 61, app. A(1), art. IX (emphasis added). It is not surprising, therefore, that every other circuit to have considered this issue has concluded that state-law claims against write-your-own insurance providers are preempted by federal law. *See e.g.*, *Remund v. State Farm Fire & Cas. Co.*, 483 F. App'x 403, 408–11 (10th Cir. 2012); *Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1344 (5th Cir. 2007);

18

*Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389–90 (5th Cir. 2005); *C.E.R. 1988, Inc. v. Aetna Casualty and Surety Co.*, 386 F.3d 263, 268–72 (3d Cir. 2004); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1122 (11th Cir. 2004); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 948–50 (6th Cir. 2002).

The Woodsons argue nonetheless that *federal* regulations allow for write-your-own company liability for the bad faith handling of claims. Recited fully, their argument on this point is as follows:

> First, under FEMA regulations, WYO companies are given great independence, and are in fact required, to use their own resources and standards to handle SFIP [Standard Form Insurance Policy] claims, as they would handle their non-SFIP claims. 44 C.F.R. § 62.23(g) states that "A WYO Company shall act as a fiscal agent of the Federal Government, but not as its general agent. WYO Companies are *solely responsible for their obligations to their insured* under any [NFIP] flood insurance policies . . ." (emphasis added). *See* also 44 C.F.R. § 62.23(d) (WYO insurer "shall arrange for the adjustment, settlement, payment and defense of all claims" arising from SFIP, based on SFIP's terms and conditions); 44 C.F.R. § 62.23(e) (WYO company "shall use its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own business affairs," subject to FEMA regulations); 44 C.F.R. § 62.23(i)(1) ("WYO Companies will adjust claims in accordance with general Company standards, guided by NFIP Claims manuals").

> Second, federal law contemplates that, because of the autonomy afforded WYO companies to handle SFIP claims, the WYO insurers are liable for their own misconduct under state law. 42 U.S.C. § 4081(c) provides that FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission." Likewise, 44 C.F.R. Pt. 62, App. A, Art. III(D)(3)(a) provides that the FEMA Office of the General Counsel ("OGC") "shall review" litigation arising under the NFIP: "If the FEMA OGC finds that the litigation is grounded in actions by the Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence, then the FEMA OGC shall make a recommendation to the Federal Insurance Administrator regarding whether all or part of the litigation is significantly outside the scope of

19

the Arrangement." If the Administrator agrees, the WYO insurer is notified "that any award or judgment for damages and any costs to defend such litigation will not be recognized under Article III as a reimbursable loss cost, expense or expense reimbursement." Art. III(D)(3)(b). These provisions contemplate that state-based claims may be brought against WYO insurers for their tortious misconduct.

Regardless of whether the Woodsons are correct about the possibility of bad-faith-handling liability for WYO insurers by virtue of these *federal* regulations — an issue that we do not address — any such claims would be governed *exclusively* by federal law, and the applicable federal law requires that any claim on the policy or arising out of a WYO insurer's handling of the claim under the policy must be filed within one year of the denial of the claim. 44 C.F.R. pt. 61, app. A(1), art. VII(R).

In short, we hold that the Woodsons' state law claim under the North Carolina Unfair and Deceptive Trade Practices Act for bad faith handling of their claim under the policy is preempted by federal law and that any similar claims they posit under Title 44, Part 62, of the Code of Federal Regulations, if available, are nonetheless barred by the one-year statute of limitations contained in federal law. And because the district court's award of attorneys fees to the Woodsons is premised on the same state law that we hold is preempted, the award too must be set aside.

Accordingly, the judgments of the district court are

REVERSED.