**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1106**

SLAY'S RESTORATION, LLC,

Plaintiff - Appellant,

v.

WRIGHT NATIONAL FLOOD INSURANCE COMPANY; COLONIAL CLAIMS CORPORATION; KLSM CONSULTING GROUP, INC., d/b/a JD Consulting & Appraisal Group; CIS GROUP LLC; SAMUEL WOODARD; JEFFREY NICHOLL; JEFFREY P. KAISER; MICHAEL CARMELIA,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Raymond A. Jackson, District Judge. (4:15-cv-00140-RAJ-LRL)

Argued: December 7, 2017                    Decided: March 9, 2018

Before NIEMEYER and AGEE, Circuit Judges, and Paula XINIS, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Xinis joined.

**ARGUED:** Joseph H. Langerak, IV, JACKSON KELLY PLLC, Evansville, Indiana, for Appellant. Theodore Ira Brenner, FREEBORN & PETERS, LLP, Richmond, Virginia, for Appellees Wright National Flood Insurance Company, Colonial Claims Corporation,

and Jeffrey Nicholl. **ON BRIEF:** James D. Johnson, JACKSON KELLY PLLC, Evansville, Indiana; John S. Wilson, WILSON & MCINTYRE PLLC, Norfolk, Virginia, for Appellant. Alexander S. de Witt, FREEBORN & PETERS LLP, Richmond, Virginia, for Appellees Wright National Flood Insurance Company, Colonial Claims Corporation, and Jeffrey Nicholl. Ramsay C. McCullough, Kristina H. Vaquera, JACKSON LEWIS PC, Norfolk, Virginia, for Appellees KLSM Consulting Group, Inc., CIS Group, Inc., Samuel Woodard, and Jeffrey Kaiser.

——————————

NIEMEYER, Circuit Judge:

In this appeal, we hold that a *subcontractor* hired by a property owner's contractor to repair flood damage to the owner's property was not injured in its business or property *by reason of* a pattern of racketeering allegedly carried out by the property owner's *insurance company* and its independent consultants to reduce the amount paid on the property owner's insurance claims for reimbursement of the repair costs. Accordingly, the injury alleged by the property owner's subcontractor — in this case, Slay's Restoration, LLC — was not proximately caused by conduct of the insurance company, and Slay's Restoration therefore failed to state a plausible claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against the insurance company and its consultants upon which relief could be granted. *See* 18 U.S.C. §§ 1962(c), 1964(c).

When an apartment complex owned by City Line Associates, LP, was damaged by flooding, City Line hired First Atlantic Restoration, Inc., to make repairs. First Atlantic, in turn, hired the plaintiff, Slay's Restoration, as a subcontractor to perform some of the work. Using documentation provided by Slay's Restoration describing the work it did, City Line submitted several insurance claims for payment of its costs of repair to its insurance company, Wright National Flood Insurance Company. To adjust the claim, Wright Insurance hired Colonial Claims Corporation, and Colonial Claims, in turn, hired two consulting firms to provide professional assessments of the repair work done. Based on the consulting firms' assessments, Wright Insurance offered to pay its insured, City Line, less than one-half of the amount City Line requested.

3

Slay's Restoration commenced this action against Wright Insurance and its consultants contending that they fraudulently conspired to reduce City Line's claim, in violation of RICO, thereby injuring City Line's ability to pay Slay's Restoration fully for its work. On the defendants' motions, the district court dismissed Slay's Restoration's complaint, concluding (1) that Slay's Restoration did not plausibly allege that its injury was *proximately caused* by the defendants' alleged violation of RICO, as required by the statute, and, alternatively, (2) that Slay's Restoration's claim was precluded by restrictions contained in City Line's insurance policy issued under the National Flood Insurance Program.

Concluding that Slay's Restoration has not and cannot, in the circumstances of this case, adequately allege proximate causation as required for a civil RICO claim, we affirm.

I

As a result of heavy rainfall in Newport News, Virginia, in September 2014, a 200-unit apartment complex owned by City Line was damaged by flooding. City Line hired First Atlantic to effect repairs, and First Atlantic hired Slay's Restoration to perform "drying services." Upon completion of the work, Slay's Restoration submitted documentation of its work to First Atlantic and City Line for use by City Line in its presentation of claims to Wright Insurance, its insurance company. Wright Insurance provided flood insurance to City Line under the National Flood Insurance Program administered by the Federal Emergency Management Agency ("FEMA"). Under that

4

program, Wright Insurance is responsible for adjusting claims made under the policy, but FEMA ultimately pays the loss. *See Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 631 (4th Cir. 2017). City Line submitted 18 claims to Wright Insurance for over $1.2 million in the aggregate to reimburse it for the costs of repairs to 18 apartment buildings.

To adjust the claims, Wright Insurance hired Colonial Claims, a claims-adjusting firm, and Colonial Claims hired two consulting firms to evaluate the work done in repairing the flood damage, including that done by Slay's Restoration. These firms submitted reports concluding that First Atlantic and Slay's Restoration had not adhered to applicable industry standards in repairing the apartments. After receiving these reports, Wright Insurance offered to pay City Line a total amount of roughly $530,000 in satisfaction of its 18 claims.

Slay's Restoration commenced this action, alleging in some detail that the reduction of City Line's claims resulted from the two consulting firms' wrongful assessment of its work and their fraudulent representations that the work was not performed in accordance with applicable standards. Contending that the conduct amounted to violations of 18 U.S.C. §§ 1341 and 1343, which prohibit the use of the mails or wire to obtain money by fraud or false pretenses, Slay's Restoration alleged that Wright Insurance, Colonial Claims, and the two consulting firms participated in a "fraudulent scheme" to create "false reports [about the repair work done] to deny policy benefits to insureds and payments to contractors," in violation of RICO, 18 U.S.C. § 1962(c). According to Slay's Restoration, the substantial reduction of City Line's claims as a result of this scheme prevented First Atlantic and ultimately Slay's

5

Restoration from receiving full payment for their work. It claimed that it suffered a loss exceeding $900,000 and sought treble damages, as provided by 18 U.S.C. § 1964(c).

The defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending, among other things, (1) that Slay's Restoration lacked "standing" to bring its civil RICO claim because Slay's Restoration could not show that the defendants were the proximate cause of its injury, given that the parties had no contractual relationship with each other that would require the defendants to disburse FEMA funds directly to Slay's Restoration; and (2) that Slay's Restoration was, in any event, foreclosed from pursuing its claim because City Line's standard form insurance policy, as fixed by FEMA, required that any dispute from the handling of a claim be governed exclusively by FEMA regulations, the National Flood Insurance Act, and federal common law.

Agreeing with both arguments, the district court granted the defendants' motions and dismissed Slay's Restoration's complaint. On the issue of causation, the court noted that Slay's Restoration was "a subcontractor of First Atlantic, who [was] a contractor of City Line, who ha[d] an insurance policy with Wright [Insurance], who employed the [defendants]," concluding that, "on these facts, any financial injury [that Slay's Restoration] ha[d] endured was *proximately* caused by First Atlantic," not by any of the defendants' actions. In addition, the district court determined that Slay's Restoration's claim was precluded by the provisions regulating the National Flood Insurance Program and the terms of the standard form insurance policy issued by Wright Insurance as required under that program.

6

From the district court's judgment dated January 3, 2017, Slay's Restoration filed this appeal.

## II

The question presented is whether Slay's Restoration sufficiently alleged that its injury was proximately caused by the alleged racketeering — *i.e.*, that it was "injured in [its] business or property by reason of a violation of [RICO]." 18 U.S.C. § 1964(c). Slay's Restoration insists that it suffered an injury "by reason of" the defendants' conduct and contends that the district court's reliance on a lack of privity between it and Wright Insurance "place[d] unwarranted limitations on the RICO proximate cause requirement." According to Slay's Restoration, the defendants — particularly the consulting firms — engaged in a scheme to commit mail and wire fraud "*primarily directed at Slay's [Restoration]*," causing it to "accept[] [a $535,152] reduction off its billing." (Emphasis added).

Section 1964(c) provides in relevant part:

> Any person injured *in his business or property by reason of* a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (emphasis added). While this language could be construed as simply requiring "but for" causation of a plaintiff's injury and thereby allowing "all factually injured plaintiffs to recover," it is clear from context that Congress did not intend "such an expansive reading." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 265–66 (1992).

7

In *Holmes*, the Court observed that because Congress had modeled the § 1964(c) language after similar language in § 4 of the Clayton Act,[1] it undoubtedly intended that § 1964(c) have the same "judicial gloss" as had been read into § 4. The Court therefore held that, as is the case under the Clayton Act, § 1964(c) requires a showing of "proximate caus[ation]," meaning "some *direct* relation between the injury asserted and the injurious conduct alleged." *Id.* at 268; *see also Blue Shield of Va. v. McCready*, 457 U.S. 465, 477 (1982) (noting in relation to the antitrust laws that "[i]t is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property").

Since *Holmes* was decided, the Court has reiterated and reinforced its application of the proximate cause requirement to civil RICO claims. Thus, in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), the Court stated that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Id.* at 461 (emphasis added). And in *Hemi Group, LLC v. City of New York,* 559 U.S. 1 (2010), the Court clarified further the application of that requirement, noting that it turns on the *directness* of the resultant harm, not the *foreseeability* of that harm. While the Court recognized that

---

[1] The relevant Clayton Act language reads: "[A]ny person who shall be injured *in his business or property by reason of* anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15 (emphasis added).

foreseeability is an established tenet of proximate causation at common law, the Court stated that it is not a tenet that applies in the RICO context. *Id.* at 12. Thus, a court facing a RICO claim should not focus on whether the harm to the RICO plaintiff was a foreseeable result of the defendant's conduct or even whether it was "the *intended* consequence[] of [that] behavior," but rather on "the *directness of the relationship* between the conduct and the harm." *Id.* (second emphasis added) (quoting *Anza*, 547 U.S. at 470 (Thomas, J., concurring in part and dissenting in part)).

In sum, rather than incorporating the concept of foreseeability or traceability of an injury to conduct, RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result — generally at "the first step" in the chain of causation. *Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983). Therefore, regardless of how foreseeable a plaintiff's claimed injury might be or even what motive underlaid the conduct that caused the harm, the injury for which a plaintiff may seek damages under RICO cannot be contingent on or derivative of harm suffered by a different party.

The *Holmes* Court provided several rationales for this direct-relationship requirement. *First*, when an injury is not directly caused by the violation, it becomes more difficult for courts to determine what portion of the plaintiff's damages is attributable to the violation, as opposed to other, independent factors. *Holmes*, 503 U.S. at 269. *Second*, without a direct-relationship requirement, to avoid the risk of multiple recoveries, courts would need to engage in the complicated task of apportioning damages among plaintiffs along the causal chain of the defendant's violation. *Id.* And *third*,

9

directly injured plaintiffs, who presumably will also have a strong incentive to sue, can be sufficiently relied upon to vindicate the regulatory aims of the statute without opening the cause of action to indirect plaintiffs claiming speculative or convoluted injuries. *Id.* at 269–70.

In this case, Slay's Restoration has not alleged facts showing that its injury was the *direct* result of the defendants' conduct. Rather, it alleged that two consulting firms hired by Colonial Claims, who in turn was hired by Wright Insurance, colluded to defame Slay's Restoration's work with false and fraudulent reports, resulting in Wright Insurance's reduction of the amount it was willing *to pay City Line* on its claims of $1.2 million. To be sure, Slay's Restoration did contend that this reduction prevented City Line from fully compensating First Atlantic for the work it performed, which in turn prevented First Atlantic from fully compensating Slay's Restoration. But even though Slay's Restoration alleged that the defendants' fraudulent conduct was the *cause* of its injury, it did so by describing a chain of causation that extends significantly beyond "the first step," proceeding from the consulting firms' fraudulent conduct, through Colonial Claims and Wright Insurance to City Line, then to First Atlantic, and ultimately to Slay's Restoration. Because Slay's Restoration's claimed injury was not the *direct* result of the defendant's fraudulent conduct, it was not *proximately* caused by that conduct, as required by § 1964(c).

Slay's Restoration insists that this focus on the chain of causation is inapt given the circumstances here because it was the *expected* recipient of insurance funds disbursed by Wright Insurance under the policy, and therefore it had been injured *by the defendants*.

10

But this argument is nothing more than a claim that Slay's Restoration's injury *foreseeably* resulted from the defendants' conduct, not that it *directly* resulted from that conduct. As we noted, the Supreme Court in *Hemi Group* explicitly rejected a foreseeability standard for civil RICO claims. *See Hemi Group*, 559 U.S. at 12. Indeed, as *Hemi Group* explained, even if Slay's Restoration could demonstrate that its injury was one of the "*intended* consequences of the defendant[s'] unlawful behavior," it would still have to demonstrate that the injury was also the *direct* consequence. *Id.* (internal quotation marks and citation omitted); *see also Assoc. Gen. Contractors*, 459 U.S. at 537 (noting that while "an allegation of improper motive" may support a plaintiff's claim for damages under the Clayton Act, it "is not a panacea that will enable any complaint to withstand a motion to dismiss").

Slay's Restoration also seeks to bypass the direct-relationship requirement by demonstrating that its rationale, as given in *Holmes*, *see* 503 U.S. at 269–70, is not implicated here. It asserts that the district court in this case would face no difficulty in ascertaining the amount of damages owed to Slay's Restoration due to Wright Insurance's adjustment of City Line's claims because those claims were based entirely on invoices provided by Slay's Restoration and First Atlantic. This argument, however, grossly oversimplifies the process by which Slay's Restoration could receive any part of the insurance proceeds. In the circumstances of this case, both FEMA and Wright Insurance might have reasons for reducing the claims independent of the consulting firms' assessments, including complex regulations of the National Flood Insurance Program. The funds would then pass through City Line to First Atlantic, both of whom

11

might also have independent defenses to raise against a party seeking payment. In light of these potential intervening causes, we cannot assume that if Wright Insurance improperly or fraudulently evaluated the work that Slay's Restoration performed, Slay's Restoration would therefore ultimately be entitled to the full amount of its claim against First Atlantic for that work. Nor can we even assume that any failure by First Atlantic to fully compensate Slay's Restoration for its work would be entirely attributable to Wright Insurance's underpayment on City Line's claim.[2] The dangers of these assumptions are precisely what prompted the Supreme Court to adopt the proximate cause requirement.

Finally, Slay's Restoration urges that we nonetheless recognize a special exception for the circumstances in this case. But that would require us to find some non-arbitrary point at which to draw a line in the chain of causation. In creating such an exception, we would, for example, have to determine conceptually whether a third or fourth level subcontractor of an insured could bring a RICO claim against the insurance company or, indeed, whether a supplier to one of those subcontractors could. Making exceptions to the proximate cause requirement on a case-by-case basis, as Slay's Restoration would have us do, would force courts to contend with the very issues of causation and apportionment that prompted the Supreme Court to adopt the direct-relationship requirement in the first place. *Cf. Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 211

_____

[2] While Slay's Restoration may have had a claim based on contract or other grounds against First Atlantic or City Line, as parties with which it had a direct relation, it asserted no such claim in this case.

12

(1990) (refusing to recognize exceptions to the direct-relationship requirement for civil antitrust claims that would require courts to address the complex issues the requirement was intended to avert).

In sum, Slay's Restoration is not the proper plaintiff to bring a civil RICO action against the defendants in this case because the injury claimed by Slay's Restoration was not the direct result of, and therefore not proximately caused by, the defendants' alleged illegal conduct.

## III

In view of our ruling that Slay's Restoration cannot allege the requisite proximate causation, we do not reach the question of whether Slay's Restoration's claim is also precluded by the terms of Wright Insurance's standard form insurance policy. The judgment of the district court is accordingly

AFFIRMED.